## OLIVER BRONSTAD V. THE STATE.

No. 20010. Delivered March 8, 1939.

The opinion states the case.

*B. F. Word* and *Cureton & Cureton,* all of Meridian, for appellant.

*Gean B. Turner,* District Attorney, of Cleburne, *John McNamara,* of Waco, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is failing to stop and render aid; the punishment, confinement in the penitentiary for three years.

The accident occurred about 1:30 A. M., near the northeast outskirts of the town of Clifton. The person struck and injured by the truck was the appellant's wife. The proof warranted the conclusion that appellant was the driver of the truck. Appellant testified that he did not know he had run over his wife.

It is shown in bill of exception No. 2 that an officer was permitted to testify, over appellant's proper objection, that appellant stated to him at the time he arrested him that he knew he had run over his wife. If we understand the record, it shows that Mr. Smith, the father of appellant's wife, came to Meridian in the forenoon following the night the accident occurred and had an interview with sheriff P. H. Benson. The sheriff, accompanied by Mr. Smith, went to Clifton in the afternoon and contacted deputy sheriff Tyler Hill at his residence. Hill was the chief witness for the state in developing the facts surrounding the accident. Mr. Smith, with the sheriff was standing in front of deputy Hill's house, discussing the affair when appellant passed, driving his truck, going toward Valley Mills. The sheriff, his deputy, and Mr. Smith got into the sheriff's car and followed, overtaking appellant about a mile and a half south of town, and stopping him. The sheriff and deputy got out and walked up to appellant's truck and told him to get out. In about five minutes they took appellant to the sheriff's car and brought him to Meridian. The testimony of deputy sheriff Tyler Hill was first to the effect that after they stopped appellant on the highway the sheriff was the first one that said anything. He said: "Oliver (referring to appellant) get out." Appellant stepped out and the sheriff said: "I will have to take you to Meridian." Hill later testified that he did not remember whether appellant made the declaration in question before or after he was ordered out of his truck. Appellant's testimony was to the effect that he recognized the sheriff and his deputy when they overtook him on the highway south of Clifton, and that they told

him to get out of the truck, and brought him to the sheriff's office in Meridian. It was the sheriff's version that he did not formally arrest appellant until he had asked appellant whether he knew he had run over his wife, and received an affirmative answer. He testified, however, that he was investigating the accident. The sheriff was asked if appellant was under arrest at the time he made the statement to him. He answered: "No, sir, not for two or three minutes afterwards. I was investigating. I didn't know just what would happen." He was then asked the question: "After he made this statement then what did you do?" He answered: "I went back and talked to Mr. Smith and then came back and he got into the car with me and we came on to Meridian."

Appellant's objection to the testimony touching his statement to the sheriff was that he was under arrest at the time, and that the provisions of Art. 727, C. C. P., relating to confessions, had not been complied with. We think the objection was well taken. If it should be conceded that appellant had not been formally arrested at the time he made the statement, it is observed that he was in the presence of the sheriff and his deputy, both of whom he knew, and was put in custody shortly after he made the declaration. According to appellant's version, he was placed under arrest at the time and carried to Meridian. His testimony shows that he believed himself to be under arrest after he had been overtaken by the officers. In Stach v. State, 260 S. W. 569, the justice of the peace was permitted to testify, over Stach's objection, that he told Stach immediately preceding his arrest that he had been bootlegging and that he made no reply. This court held that, under the circumstances, Stach's silence when accused of crime was not admissible against him, and said that, although he had not at the moment been formally arrested, he was in the presence of the officer who immediately placed him in custody. That the officers, prior to having the conversation with appellant, had not taken him into custody, is not controlling in determining whether the receipt of the evidence was inhibited by the statute. The impression made upon the accused is to be taken into account. We quote from the language of Judge Davidson, in Buddy v. State, 227 S. W. 324, as follows:

"One of the questions presented is that during the day of the 26th the justice of the peace sent for appellant. Appellant went to his office, and was there questioned with reference to this transaction, and his statement seems to have been reduced to writing. The whole matter came up before the justice of the

peace with reference to the robbery transaction. Immediately after this appellant was arrested. Objection was made to the introduction of this testimony, which we think was well taken. Appellant was not strictly under arrest at the time, but he was suspected of crime and being questioned with reference to it by the justice of the peace. He was not warned. Under such circumstances this court has held in quite a number of cases that this character of testimony, either for impeachment or as original, was not introducible. See Wood v. State, 22 Tex. App. 431, 3 S. W. 336; Reynolds v. State, 82 Tex. Cr. R. 443, 199 S. W. 636; Oliver v. State, 81 Tex. Cr. R. 529, 197 S. W. 185; Calloway v. State, 55 Tex. Cr. R. 262, 116 S. W. 575; Fry v. State, 58 Tex. Cr. R. 169, 124 S. W. 920; Simmons v. State, 79 Tex. Cr. R. 341, 184 S. W. 226."

See, also, Rollins v. State, 73 S. W. (2d) 541; Lightfoot v. State, 35 S. W. (2d) 163.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.