Opinion delivered June 11, 1887.

No. 5554.

RUFUS CARTER *v.* THE STATE.

1. HORSE THEFT—EVIDENCE.—The prosecution being for the theft of a horse in B. county on January 19, 1887, the State was permitted to prove, in rebuttal, that the defendant was seen in the city of B., in W. county, on the night of January 31, when another horse than that named in the indictment was there stolen. *Held,* that the said evidence was erroneously admitted, because it was irrelevant and immaterial, involved no issue in the case, and was not in rebuttal of any proof adduced by the defense.

2. SAME—EVIDENCE that after his arrest the defendant refused to divulge his name was erroneously admitted, in view of the absence of evidence bringing such proof within the exceptions of Article 750 of the Code of Criminal Procedure.

3. SAME.—For the purpose of establishing identity in developing the *res gestæ,* or to prove guilt by circumstances connected with the theft, or to show the intent with which the accused acted with respect to the property involved in the trial, it was competent for the State to prove the theft of other property of the same kind at the time and place of the offense charged, but the failure of the trial court, in the charge to the jury, to so limit and circumscribe the purpose and effect of such proof was error.

APPEAL from the District Court of Washington. Tried below before the Hon. I. B. McFarland.

This conviction was for the theft, on the fourth day of February, 1887, of a horse, the property of William Cummings. The

penalty assessed was a term of fifteen years in the penitentiary. The venue was laid in Washington county, where the stolen animal was found on the day alleged in the indictment.

William Cummings, the first witness for the State, testified, in substance, that he lived in the town of Caldwell, Burleson county, Texas. He testified, in substance, that his two certain horses, a bay pony and a roan mare, were stolen from his lot on the night of January 19, 1887. Defendant was at witness's place of business on the evening of that day and proposed to trade with him for the bay pony. Witness had never seen the roan mare since, but recovered the bay pony through the sheriff of Washington county, about three weeks after it was stolen.

C. C. Boyd, deputy sheriff of Washington county, testified, for the State, in substance, that he and Deputy Sheriff Langhammer went to the house of Maria Williams, in Brenham, Washington county, on the third day of February, 1887, to arrest Albert Lindsey. They did not find Lindsey, but when witness reached the back door of the house the defendant rushed out and attempted to escape. Witness, after a struggle, arrested him on suspicion, having no warrant for him. En route to jail, witness asked defendant his name, but he refused to divulge it. A day or two later witness got Cumming's bay pony at the house of Albert Lindsey, where the said Maria Williams lived. He turned the pony over to Sheriff Dever. Langhammer corroborated this witness in every particular.

Maria Williams testified, for the State, that her sons and Judge Williams and Albert Lindsey, and the latter's wife, lived with her at her house in Brenham, Texas. Just before daylight one morning in January, 1887, about two weeks before his arrest, the defendant, who was the witness's son-in-law, but then separated from his wife, came to witness's house, bringing a bay pony with him. He went into Albert Lindsey's room, and told Lindsey that he had a horse or horses that he wanted to leave at the house for a short time. Lindsey replied that witness owned the place and must be applied to. Defendant then asked witness if he could leave the horse at her place. She replied that if it was good property he could. This was on Friday morning. Defendant stayed until Saturday morning, when he and Lindsey left, the latter riding the said bay pony. Defendant came back on Sunday of the week following, and left again on Monday night, January 31. He returned again on Wednesday and remained until he was arrested on Friday. The bay horse

described was the same taken by Mr. Boyd after the arrest of defendant. On the morning after the defendant brought the horse to witness's house, something was said about the title to the horse, and defendant told Lindsey and Judge Williams that they could use the horse and reply to all questions that the animal belonged to him. The witness denied that she ever told Sallie Hewitt that defendant did not bring a horse to her house, and that he had been merely lying around her house seeking a reconciliation with his wife.

May Lindsey, the wife of Albert Lindsey, corroborated the last witness, but stated that defendant brought two horses, a bay pony and a roan mare, to Maria Williams's house.

Sheriff Dever testified, for the State, that the bay pony delivered by him to William Cummings, upon proof of ownership, was received by him from Deputy Sheriff C. C. Boyd.

The State closed.

Horace Carter, Mose Carter, Jack Williams and Louis Simmons, witnesses for the defense, testified that defendant slept at the house of and in the bed with Jack Williams in Burleson county, Texas, on the night of January 19, 1887. Other witnesses testified that he was in and about the town of Caldwell throughout the twentieth day of January, 1887, the day after the theft of Cummings's horses.

Sallie Hewitt testified, for the defense, that, on Monday after defendant's arrest, Maria Williams, in conversation with her about the arrest of defendant, said that defendant did not bring any horses to her house, and that he came to her house about a week before his arrest, and lay around until arrested, trying to conciliate his wife, Alice, the daughter of the said Maria.

The defense closed.

Becker and McAdoo, testifying for the State, in rebuttal, said that they saw the defendant in Brenham on the night of January 31, 1887, on which night Becker's horse was stolen.

The motion for new trial raised the questions discussed in the opinion.

*Bassett, Muse & Muse,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

Willson, Judge. Over objections of defendant, the State was permitted to prove by two witnesses that they saw the de-

fendant in Brenham on the night of January 31, 1887, and that on that night a horse was stolen in Brenham from one of said witnesses. This testimony was offered and admitted as rebutting testimony, and was objected to by defendant, 1, because the same was irrelevant and impertinent; 2, because the defend- ant's whereabouts on January 31, 1887, was not an issue in the case; 3, defendant was not on trial for theft of the horse said to have been stolen on that night from Becker, one of said witnesses, and said evidence was calculated to prejudice the de- fendant, etc. These objections to said testimony should, we think, have been sustained.

We can not perceive that it was relevant, even in a remote de- gree, to any issue in the case, and it was not in rebuttal of any evidence introduced by the defendant. The theft for which the defendant was on trial was committed on the night of January 19, 1887, in Burleson county, and the defendant, having the stolen horse in his possession, was in Brenham, Washington county, on January 20, 1887, at the house of Maria Williams, where said horse was found and recovered February 4, 1887, by the officers of Washington county. The fact that defendant was in Brenham on the night of January 31, 1887, throws no light whatever upon the transaction, either as to the original taking of the horse in Burleson county, or the removal to, and possession of the same, in Washington county. It was not claimed by defendant that he was not in Brenham on the said night, and whether he was there or elsewhere could have no bearing upon the issue of his guilt of the theft for which he was being tried; for the crime had been committed and was in all things complete prior to that time. We can imagine no purpose for the introduction of this evidence, except that of raising a suspicion against the defendant that he stole Becker's horse. It could certainly have no other effect in the consideration of the case by the jury. It is reasonable to conclude that it did have this effect, and did prejudice the defendant in the minds of the jury, causing them to assess against him the maximum punish- ment prescribed by the law for this offense.

It was error to admit the testimony of the witnesses Boyd and Langhammer that defendant, when asked to tell his name, re- fused to do so. This refusal to tell his name was after he had been arrested, and while he was in the custody of an officer, and it was not shown that it was admissible evidence under any of the exceptions of the statute. (Code Crim. Proc., art. 750; Nei-

derluck v. The State, 21 Texas Ct. App., 320; Nolen v. The State, 14 Id., 474.)

As to the circumstances under which he was arrested, and his conduct on that occasion prior to his arrest, we are of the opinion that the court did not err in permitting the same to be proved. This was testimony tending to show that defendant had committed a crime, and, in connection with other testimony adduced on the trial, afforded a circumstance which pointed to the theft with which he was charged as the crime which he had committed, and from the consequences of which he was endeavoring to escape.

In proving the theft of the horse named in the indictment, the State proved that another horse had been stolen at the same time and place. This being the evidence, the court should have explained in its charge to the jury the purposes of such evidence, that is, that it was admitted for the purpose of establishing indentity in developing the *res gestæ*, or to prove the guilt of the accused with theft by circumstances connected with the theft, or to show the intent with which the accused acted with respect to the property for the theft of which he was on trial, (Alexander v. The State, 21 Texas Ct. App., 406), and that they could not convict the accused for the theft of any other horse than that named in the indictment. The court omitted to give such an instruction, and such omission was error. In other respects we find no material error in the charge of the court.

Because of the errors pointed out, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*