### Florence Reynolds v. The State.

#### No. 4641.  Decided October 24, 1917.

**1.—Murder—Evidence—Declarations of Defendant—Rule Stated.**

Where a party is examined as a witness in proceedings before a magistrate, or a coroner's inquest, and 'he is charged with or suspected of the crime then under investigation, and is then aware that he is so charged or suspected, his testimony before the investigating tribunal can not be received against him upon his trial for the same offense, although a different proposition might be presented if he is warned. Following Carter v. State, 37 Texas, 362, and other cases.

**2.—Same—Evidence—Declarations of Defendant.**

Where, upon trial of murder, defendant was suspected of the crime, and was involuntarily brought before an examining court which was investigating the facts, and was forced to testify without any warning that what she might say might be used against her, it was reversible error to introduce her said testimony against her in the instant trial. Following Wood v. State, 22 Texas Crim. App., 431, and other cases. Prendergast, Judge, dissenting.

**3.—Same—Evidence—Exculpatory Declarations.**

Where it was contended by the State that defendant's testimony before the examining trial and which was admitted on the instant trial, was exculpatory, but the record showed that the State did not introduce it as such, but to fix the culpability upon defendant, it was not exculpatory in its character. Prendergast, Judge, dissenting.

**4.—Same—Examining Court Testimony—Harmless Error—Waiver.**

Where, upon trial of murder, the involuntary statement of defendant before an examining court without warning was introduced in evidence on the trial, the contention of the State that in as much as defendant testified upon a final trial to practically the same fact, the error, if any, would be harmless, is untenable, first, because the testimony was not the same, and second, she did not waive the error because she testified before the jury in explanation of said examining court testimony, nor was the error cured by its withdrawal. Prendergast, Judge, dissenting.

Appeal from the District Court of Potter.  Tried below before the Hon. Hugh L. Umphres.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Reeder & Reeder* and *J. B. Dooley,* for appellant.—On question of declaration of defendant:  Nolen v. State, 8 Texas Crim. App., 585; Wood v. State, 3 S. W. Rep., 336; Gilder v. State, 35 Texas Crim. Rep., 360, 33 S. W. Rep., 867; Twiggs v. State, 75 S. W. Rep., 531; Fry v. State, 58 Texas Crim. Rep., 169, 124 S. W. Rep., 920; Dover v. State, 197 S. W. Rep., 192.

On question of exculpatory statements: Pratt v. State, 53 Texas Crim. Rep., 281, 109 S. W. Rep., 138; Banks v. State, 56 Texas Crim. Rep., 262, 119 S. W. Rep., 847; Pharr v. State, 7 Texas Crim. App., 472; Jones v. State, 29 id., 20.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of declarations by defendant: Casey v. State, 54 Texas Crim. Rep., 587; Wharton v. State, 69 Texas Crim. Rep., 1, 152 S. W. Rep., 1082; Mason v. State, 74 Texas Crim. Rep., 256, 168 S. W. Rep., 115.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and allotted twenty years confinement in the penitentiary.

The evidence discloses that she and her husband, the deceased, were hunting. They were riding in a buggy, she doing the driving. Her husband was very fond of hunting, and they were out on this occasion, as they had been on many previous occasions, killing rabbits with which to feed their turkeys, of which they had about two hundred. On this particular occasion several rabbits had been killed, and he had the buggy stopped suddenly upon discovering three rabbits in a bunch. He jumped out of the buggy to kill the rabbits, and when the gun went off he fell to the ground shot. The evidence shows that they had a pistol, a rifle and a shotgun in the buggy, and that the deceased used the rifle and the shotgun at his pleasure in shooting rabbits, and seems to have been a very fine shot. The shotgun was cocked, the breech was on the seat with the barrel back against the buggy top, which seems to have been let down. His custom was to so carry the shotgun. The body of deceased was found by the side of the buggy lying with his feet a little northeast and his head a little south, not quite or exactly parallel with the buggy. The wound was inflicted by the discharge of the shotgun. By the side of the body was found the rifle and shotgun, being upon opposite sides of his body. The wife was the only one present at the time of his death. The authorities instituted an investigation, and held what the witnesses term a coroner's inquest just after the killing. The body was carried to town, and the next morning at the courthouse another proceeding was had, in the nature of a court inquiry, or a continuance of the investigation begun the evening before, or an examining court. Whatever it may be termed, they were investigating the facts and trying to ascertain the cause of the killing and how it occurred. The wife was suspected and was under investigation. She was much depressed over the death of her husband, and when it was sought to bring her before the investigating court the physicians advised against it, as did her father. The court had her brought anyway, and she was informed by her father, and she understood that she was suspected of having shot her husband. She was brought by the officers under process before the court, or justice of the peace, and required to testify. There was no warning given her that what she might say might be used against her; her statements were reduced to writing, and signed by her. We

deem it unnecessary to go into a detailed statement of her evidence. Briefly, it may be stated, she testified they went hunting, and when her husband got out of the buggy he took a gun, doubtless the rifle, and when he got ready to shoot at the rabbits she put her fingers to her ears and shut her eyes, as she did not like to hear the discharge of the gun. She heard an explosion; looked and saw her husband falling. She did not know how the matter occurred, but from the position of the shotgun in the buggy she supposed it had fallen or was jerked out by him, and as it was cocked it exploded, and the load of shot went into his back, his back being to the buggy at the time of the explosion. It was elicited from her that her husband had taken out a five thousand dollar insurance policy a month or two before his death. There are other details, under rigid examination to try to fasten the guilt upon her as the cause of her husband's death. While she was being examined the grand jury was in session in a room of the courthouse on the same floor and was brought in and heard her testimony. When she finished testifying the grand jury retired to their room. Objection was urged to the introduction of her statement under the circumstances. The court erred in permitting this testimony. We hardly deem it necessary to go into a discussion of this matter as the authorities are numerous and all one way. Since the case of Wood v. State, 22 Texas Crim. App., 431, the rule has been followed, that if, when a party is examined as a witness in proceedings before a magistrate or a coroner's inquest, he is charged or suspected of the crime then under investigation, and is then aware that he is so charged or suspected, his testimony before the investigation can not be received against him upon his trial for the same offense. That rule has been followed in all decisions bearing upon that question. If she had been warned a different proposition might be presented, but she was not, and from that viewpoint this testimony cannot be used against her. Wood v. State, supra; Carter v. State, 37 Texas, 362; Nolen v. State, 8 Texas Crim. App., 585; Edlen v. State, 9 Texas Crim. App., 419; Myers v. State, 6 Texas Crim. App., 1; Speer v. State, 4 Texas Crim. App., 474; Gilder v. State, 35 Texas Crim. Rep., 360; Twiggs v. State, 75 S. W. Rep., 531; Fry v. State, 58 Texas Crim. Rep., 169; Simmons v. State, 79 Texas Crim. Rep., 341, 184 S. W. Rep., 226; Dover v. State, 81 Texas Crim. Rep., 545, 197 S. W. Rep., 192; Oliver v. State, 81 Texas Crim. Rep., 529, 197 S. W. Rep., 240, and Calloway v. State, 55 Texas Crim. Rep., 262.

It is contended by the State that her testimony was exculpatory. We hardly think this worthy of serious consideration. The State did not introduce it as exculpatory evidence, but it was introduced expressly as shown by the testimony to fix the culpability upon somebody, and especially upon appellant. It was used for that purpose, and introduced for that purpose. It placed her at the scene of the tragedy; it placed her in position where she could have used the gun, gave her an opportunity, and excludes the presence of everybody else except herself and the deceased.

It is contended by the State that inasmuch as she testified, that this would render the error of the court harmless because she testified practically upon the witness stand as she did before the examining court. She makes one change, at least, in her testimony on the trial from her testimony before the examining court. Before the examining court she stated that he had the insurance policy about a month. On the trial she stated only a day or two, but the explanation she gave was this, that they had applied for it about a month or so before the killing, and had only received it a day or two before the killing. It is here stated that when the State introduced this illegal testimony against appellant, over her objection, the fact that she went upon the stand to make an explanation or testify did not cure the error. It was that written statement introduced over her protest that caused her to take the stand during the trial and testify before the jury. A party does not waive errors of this sort where they are committed over his protest by taking the stand or introducing evidence to lessen the consequences of it as far as may be done. The error of the court was not by this manner waived. Again, it is contended by the State that the court undertook to charge out its effect. This did not cure it. The court can not limit the effect of erroneous testimony by a charge.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, Judge (dissenting).—I do not concur in all the statement of the case by Judge Davidson's opinion. However, it is wholly unnecessary for me to state the facts, except that appellant did not go on the stand to testify to explain her written sworn testimony before the examining court. On the contrary, she voluntarily took the stand and testified for herself in order to try to induce the jury to acquit her. But whatever induced her to testify, her testimony on this trial was precisely, in substance, her testimony on the examining trial, with the sole exception of when the insurance policy was secured by deceased for her; and unquestionably, on this point, her evidence on this trial, was worse for her than on the examining trial. So that undoubtedly the admission of her testimony at the examining trial was perfectly harmless, and to reverse this case because of its admission, even if error, is to substitute the shadow for the substance, and reverse on a wholly academic point neither authorized nor justified in law or justice. Undoubtedly, the State can, on another trial, prove what she swore on this trial.

This case should have been affirmed, not reversed.