L. A. BALLARD v. THE STATE.

No. 8246.    Decided May 21, 1924.

**Murder—Argument of State's Counsel.**

Where, upon trial of murder, appellant's counsel in his argument commented upon the failure of the State to controvert evidence that the deceased was drunk, to which the State's attorney replied in his argument: "You ask why we did not prove the deceased was not drunk, etc. I say to y( ∵ w, sir, we will prove it now. The witness will swear it all right. If you will agree to it we will prove it now. Will you agree?", Which was rc ersible error. Following: Stephens v. State, 20 Texas Crim. App., ˙55, and other cases.

Appeal from the District Court of Jones. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*J. F. Cunningham,* for appellant.—Cited: Askew v. State, 113 S. W. Rep., 287; Davis v. State, 114 id., 866.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney for the State, and *Stinson, Coombes & Brookes,* also for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of twenty-five years.

Appellant shot and killed Frank Bates. The homicide occurred in daytime in Day's hardware store in the town of Hamlin. Appellant was a plumber, and had his shop in the second story of the building oc-

cupied by the hardware store mentioned. His place might be reached either by entering the back door of the hardware store and going up the stairway at the rear of the building, or by entering the front door and walking back to the stairway mentioned.

Appellant and Bates met in the store. Part of the encounter was seen by two witnesses introduced by the State: also by some witnesses introduced by the appellant. No one saw Bates enter the store. The appellant came in at the front door and soon after his entry the shooting took place. One of the witnesses said that just as he heard the shot he saw Bates staggering towards the show case and fall to the floor; that he saw him wave his hand and fire one shot, but whether this was before or after he fell the witness was not positive: nor was the witness aware of any previous happening touching the transaction.

There were eight or ten shots fired. Seven shots took effect upon the deceased, several in his hand, one in his collarbone, one entered the back and penetrated his body. Appellant was wounded in his hand, and there was a hole through his cap, which he declared was from a shot fired by the deceased.

Several witnesses, who were nearby and reached the parties immediately after the shots were fired, testified to res gestae statements made by the appellant, in substance, that he was obliged to shoot as Bates pulled his pistol and began firing at him. One of the witnesses took possession of the appellant's pistol which contained three empty chambers and three that were loaded. Bates' pistol, which was an automatic, was picked up from the floor. The magazine was designed to hold eight or nine cartridges, but at the time it contained only six. The pistol was cocked. One of the State's witnesses declared that during the shooting, the beginning of which he did not see, the appellant was advancing upon the deceased. A witness for the appellant testified that he saw the beginning of the difficulty and that the deceased fired the first shot and that appellant thereafter drew his pistol and shot.

Whether Bates was drunk at the time was an issue upon which the appellant took the affirmative.

The evidence is silent touching the cause of the enmity of the parties. A number of witnesses testified to previous threats made by the deceased to take the life of the appellant. These threats were specific and affirmative, and some of them were communicated to the appellant before the homicide. According to the evidence of some of these witnesses, the deceased, on the day of the homicide, looked for and made inquiry as to the whereabouts of the appellant, stating in most positive terms that he was going to kill him if he found him. Deceased had an extended conversation a short time before the homicide with the witness Bailey, who was an employee of the appellant, the subject of which was that deceased desired to find and kill the ap-

pellant. According to the witness, the deceased looked for the appellant about the premises and around and under the house. The witness endeavored to learn from the deceased the cause of his enmity, but he declined to reveal it, stating: "You will know later." This witness and another, to whom the deceased had made substantially the same remarks, were in the act of searching for the appellant in order to warn and inform him of the attitude of the deceased when they learned of the homicide. On cross-examination, State's counsel directed to the witness Bailey this question:

"Don't you know Bates did tell you what he was going to kill Ballard for?"

The witness said: "No." State's counsel then propounded the following question:

"Don't you know that Bates told you that he was going to kill Ballard on account of improper conduct of Ballard towards Bates' wife?"

The court sustained the objection to this question and instructed the jury to disregard it. The reason for excluding the question is not given. The learned trial judge who presided would not have excluded the question except upon some reason which he deemed sound. We assume that his action was grounded upon the opinion that the question was not asked with the expectation of an affirmative answer, and that the State's counsel had no reason to believe that the witness' version of the remarks of the deceased would be controverted. The witness to whom it was propounded had repeatedly declared that Bates refused to state the reason for his enmity towards Ballard. The suggestion embraced in the question propounded by State's counsel is the only item in the record tending to throw any light upon the cause of the animosity of the deceased towards the appellant as reflected by the numerous threats in evidence; nor is there any evidence pointing to a motive on the part of the appellant to kill the deceased. It would seem from the evidence that the deceased, for some undisclosd cause, had determined to kill the appellant, searched for him, went to his place of business armed, and that upon the meeting of the two, the appellant was shot and the deceased was killed.

The evidence strongly presents the theory of self-defense. It is conceivable that the jury was searching in their minds for a reason, and that the inquiry made being the only one suggested, it had bearing upon the minds of the jury adverse to the appellant. Facts gotten to jury by indirect means are not rendered thereby less harmful. Bringing before the jury prejudicial matters not in evidence is a practice opposed by all courts, and the rule against it may be infringed by questions as well as by argument. See Rosa v. State, 86 Texas Crim. Rep., 650, and cases cited. From an interesting note

upon this subject reported in the Amer. State Rep., Vol. 100, p. 690, we take the following quotation:

"Where the mere putting of a question conveys to the jury information which cannot be properly laid before them, thus tending to render the trial unfair and illegal, a verdict so obtained stands on exactly the same basis as if the illegal evidence were introduced by error in ruling by the court. But where the incompetent evidence conveys no information other than that contained in testimony not objected to, the verdict will not be set aside."

The transgression of this rule will not in all cases work a reversal. Its effect is to be measured by the facts in the record and the verdict rendered.

The State's witness Bull testified to an extended conversation with the deceased ending a few moments before the homicide. There was evidence that the deceased was drunk before the homicide. Appellant's counsel, in his argument, commented upon the failure of the State to controvert this evidence by the witness Bull. State's counsel, in reply, used this language:

"You ask why we did not prove the deceased was not drunk by the witness Bull. I say to you now, sir, we will prove it now. He will swear it, all right. If you will agree to it, we will prove it now. Will you agree?"

We think that in so doing he gave to the jury his own testimony, hearsay in its nature, touching what he might have proved by Bull. The State, having used Bull as a witness and proved by him relations with the deceased which suggests that he might have been able to throw light upon the condition of the deceased immediately before the homicide, refrained from asking Bull whether or not the deceased was drunk. The failure to make this inquiry was a legitimate subject of comment by counsel for the appellant. The declaration by the State's counsel as to what he could have proved by Bull was an improper means of meeting a proper argument of his adversary.

The witness Reynolds gave some favorable and material testimony on behalf of the appellant. State's counsel, in his argument, told the jury that but for the objection interposed by appellant's counsel, the State could have proved against the witness Reynolds the discrediting fact that he had been charged with an offense involving moral turpitude. Mr. Branch, in his Ann. Tex. P. C., Sec. 364, cites many decisions of this State in support of the proposition that "it is improper for State's counsel to get before the jury in argument a fact which he would not be entitled to prove and the effect of which is damaging to defendant." Stephens v. State, 20 Texas Crim. App., 255, and other cases. The same author also said:

"It is improper for State's counsel in arguing the case to the jury to state what he could have proved had not defendant objected."

See Clark v. State, 23 Texas Crim. App., 263; Tally v. State, 48 Texas Crim. Rep., 474; Askew v. State, 54 Texas Crim. Rep., 414; Johnson v. State. 63 Texas Crim. Rep., 50; Laubach v. State. 12 Texas Crim. App., 591; Greene v. State, 17 Texas Crim. App.. 407, and other cases listed on pages 205-206. These precedents are regarded pertinently in point against the remarks of counsel touching what might have been proved by the witness Bull and what might have been proved against the witness Reynolds.

Considering the evidence, the verdict is not one which might be expected had the jury been influenced by the evidence alone. The remarks of State's counsel were calculated to injure the appellant's case. They were improper, and notwithstanding the effort of the learned trial judge to minimize the harm, the probability of injury is not overcome. It is believed that the appellant should have been accorded a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*