### ELSIE MAE LEE V. STATE

No. 28,649. January 2, 1957.
Appellant's Motion for Rehearing Overruled
June 6, 1957.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) June 29, 1957.

114

*Burt Barr, James H. Martin* and *Robert C. Benavides*, Dallas, for appellant.

*Henry Wade*, District Attorney, *James G. Allen*, 1st Assistant District Attorney, *Henry Lindsay, George P. Blackburn,* and *William F. Alexander*, Assistants District Attorney, Dallas, and *Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; th punishment, 10 years.

A prior 15-year conviction in this case was reversed because of a comment upon the failure of the appellant to testify. Lee v. State, 162 Texas Cr. Rep. 489, 286 S.W. 2d 635.

Police Officer Evans testified that, in response to a radio message, he went to the appellant's home shortly after midnight on the day in question, was met at the door by the appellant, who reported to him that her husband had been shot. He stated that the body of the deceased was lying face down in the hall, he felt no pulse and found the arm cool and stiff. The appellant had been shot in the area of her shoulder, but it did not prove to be a serious wound. He found a 22-calibre pistol *under but not in* the deceased's hand.

Without stating the evidence fully, we have concluded that it was satisfactorily established that both the appellant and the deceased had been shot by the same weapon and that the weapon had been fired only twice and that they were the only ones in the home except their 17-month-old baby.

Captain Churchman and Officer Ryan, who arrived upon the scene shortly after Evans, corroboraed his testimony as to

the condition of the body of the deceased and the finding of the pistol.

Dr. Nickey, a pathologist on the staff of the Dallas County Medical Examiner, testified that he performed an autopsy upon the body of the deceased and expressed the opinion from his findings that only one bullet had penetrated the body of the deceased, that it had entered first on the back side of the deceased's left arm, passed through the arm, and then entered the chest near the left nipple, thus causing instantaneous death. He gave his opinion as an expert that it would have been impossible for the deceased to have held the weapon in question in either of his hands and have inflicted the wound which he found on deceased's body.

Several witnesses testified as to conversations with the appellant over a period of time prior to the day in question in which the appellant had expressed the belief that the deceased was being unfaithful to her and threatened to kill him if she discovered that her beliefs were well grounded.

It was shown that the appellant had purchased the pistol in question quite some time before the day charged in the indictment and that a paraffin test had been made on the hands of the deceased and that it was negative as to nitrates which would indicated to the expert that the deceased had not fired a weapon.

The appellant, testifying in her own behalf *upon this trial,* denied the threats upon her husband's life, stated that she and the deceased began to argue on the evening in question and that such argument culminated in her calling her mother over long distance and asking her to come and get her and the baby. She stated that the deceased threatened to kill her if she attempted to leave him and finally pointed the pistol at her in the course of his threats, that they started fighting and wrestling for the gun, the gun went off, she felt the bullet enter her shoulder area and ran to the back bedroom, where she fainted. She testified that when she regained consciousness the deceased was lying in the hall and that she had never had the pistol in her possession during the course of the struggle.

Shortly after the arrival of the officers, the appellant was carried to the hospital, where her wound was treated by Dr. Cheek, and she was then released and returned to her home.

Dr. Cheek testified that the bullet entered the appellant in

the area of the arm pit, traveled approximately six inches under the skin, and made its exit. He stated that, in his opinion as an expert, it would not be impossible but would be exceedingly difficult for the appellant to have inflicted the injury which he found upon herself.

We have not attempted to detail the testimony of all the witnesses for the prosecution or the defense. The statement of facts herein covers 785 pages. There was evidence to support the defensive theory raised by the appellant's testimony, and there was evidence to support the state's theory that the appellant shot the deceased while he was sitting on the bed, inflicted a superficial wound upon herself, "planted" the pistol near the deceased, and then spread the alarm.

We have concluded that the testimony of the two doctors plus the paraffin test were the determining factors in the case.

The jury chose to accept the testimony which supported the state's theory of the case, and it is sufficient to support their verdict.

The facts will be discussed more fully as we proceed.

We shall discuss the bills of exception in the order advanced in an able brief and oral argument.

Appellant first contends that the court erred in allowing the state to prove, during the cross-examination of the appellant's mother, that she violated the speed laws on the night in question in responding to her daughter's call for help. A great many cases have been cited in which this court has reversed the convictions because the state was permitted to impeach a material witness by proof of unrelated specific acts of misconduct or offenses not imputing moral turpitude, but we deem it sufficient to say that they have cited no case which we consider controlling here. We would have to forget what we know of human nature to conclude that a jury would look with disfavor upon the testimony of a mother merely because she admitted that she violated the speed laws in traveling after midnight to be by her daughter's side in time of trouble. Jurors are not prone to become prejudiced against a witness who has done just what they would have done under the circumstances.

Appellant's next complaint arises out of repeated questions by the prosecutor during the course of his cross-examination of

the appellant concerning her failure to testify in the first trial of this case. A very serious question would have been raised had not the appellant, while under direct examination of her own attorney, volunteered the information that she had not testified upon a prior trial of this same case. It is a fundamental maxim that an accused cannot be heard to complain about the proof of certain facts which he has himself adduced.

The only serious question in this case, as we see it, grows out of the following cross-examination of the appellant. We quote from the record:

"Q. When you were arrested back in November of 1954, do you remember Mr. Bruner asking you what your name was and you told him to ask my lawyer and he will tell you.

"Mr. Benavides: Now, if the Court please.

"Q. Do you remember telling Mr. Bruner that?

"A. On which occasion was that?

"Mr. Benavides: We object to the question.

"Court: Just a minute, please.

"Mr. Benavides: That is a highly inflamatory and prejudicial.

"Court: Well, the Defendant was under arrest. I sustain the objection.

"Mr. Benavides: Will Your Honor instruct the jury?

"Court: I instruct the Jury not to consider that for any purpose. The question or the answer if one was made.

"Mr. Benavides: We again, Your Honor, have to move for a mistrial.

"Court: I refuse it."

Though not controlling, it should be remembered that Mr. Bruner was not an arresting officer but was one of the prosecutors in the first trial and that the appellant was not arrested for some time after the day charged in the indictment.

Laying aside for a moment the fact that the question was not answered, that the objection thereto was sustained, and the jury instructed not to consider it, let us consider the merits of the appellant's contention.

It is true that in Carter v. State, 23 Texas App. 508, 5 S.W. 128, which has been cited with approval in Sharp v. State, 153 Texas Cr. Rep. 96, 217 S.W. 2d 1017, and Cardwell v. State, 156 Texas Cr. Rep. 457, 243 S.W. 2d 702, this court held that it was error to prove that the accused, while under arrest, refused to tell his name.

But let us see if the question was justified by the record. On cross-examination by appellant's counsel, Officer Evans testified that when he arrived at the house the appellant had told him that her husband had been shot, that her name was Elsie, that her mother was on her way to Dallas, and nothing more, even though repeatedly questioned.

Captain Churchman was questioned closely on cross-examination as to whether or not the appellant had told him later in the day that her husband's death was the result of an accident growing out of a struggle over a gun.

The appellant, while testifying in her own behalf, stated that she had talked to the officers on the day in question and that she had explained to them fully about how the deceased had met his death.

We have concluded that the question here might easily be justified as rebuttal of the above testimony.

We have concluded that the prompt action of the judge would prevent the above question, if improper, from bringing about a reversal of this conviction upon this point only. Sharp v. State, supra.

Appellant's last complaint grows out of the refusal of the court to grant a new trial because of the matters set out in Bill of Exception No. 4. From the bill as qualified, it appears that after the jury had deliberated 20 hours, they sent a note to the court reporting that they were hopelessly deadlocked, that the court did not answer the note, and the jury came in with a verdict within 30 or 45 minutes thereafter.

This question was raised in appellant's amended motion for

new trial, but, though given an opportunity to do so, the appellant declined to offer any evidence in support of her contention that this event brought about a coerced verdict.

Finding no reversible error, the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

With much earnestness, appellant insists that the cross-examination of the appellant by state's counsel as to her failure to testify upon a former trial constitutes a violation of Art. 710, C.C.P., and renders mandatory a reversal of this conviction.

There is no question but that counsel for the state are prohibited by Art. 710, C.C.P., from referring to the failure of the accused to testify in the case.

This preclusion extends to and covers the failure to testify at other trials. Hare v. State, 56 Texas Cr. Rep. 6, 118 S.W. 544; Brown v. State, 57 Texas Cr. Rep. 269, 122 S.W. 565; White v. State, 83 Texas Cr. Rep. 252, 202 S.W. 737.

The facts show that state's counsel, upon cross-examination of appellant, repeatedly referred to the fact that on a former trial of the case she did not testify, and that she admitted not having done so.

That a violation of the provisions of Art. 710, C.C.P., occurred is not subject to serious contradiction.

Whether such proof, under the facts of this case, constitutes reversible error presents quite another question.

Upon her direct examination, appellant was propounded the following question by her counsel:

"Q. Now, Mrs. Lee, you didn't testify at the other trial, did you?"

Her reply was: "No, sir."

The appellant placed before the jury, therefore, the fact that "at the other trial" she did not testify as a witness in her own behalf.

Such was the sole fact that Art. 710, C.C.P., precluded from proof by the state.

It is true that the cross-examination of appellant was in much detail and included facts and circumstances to which she did not testify or contradict at the other trial.

It must be kept in mind that the only provision of the law which precluded state's counsel from making the cross-examination was the reference to her failure to testify.

When the impediment was removed by proof of that fact by appellant, the right to object because thereof was eliminated.

We remain convinced that a correct conclusion was reached originally.

Appellant's motion for rehearing is overruled.