## CHARLES LEONARD PHILLIPS V. STATE

No. 29,067. March 12, 1958.
Appellant's Motion for Rehearing Overruled
April 30, 1958.

*John D. Glass,* and *Ben Ferrell,* Tyler, for appellant.

*Harry Loftis,* Criminal District Attorney, *R. S. Burruss,* Assistant Criminal District Attorney, Tyler, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, life.

The homicide occurred at the home of the deceased at a time when his wife, two brothers, two of his children and their spouses were present. The appellant was a neighbor. All of them, including the appellant, testified as to the events preceding the homicide; and since there is no material conflict, except as here-inafter noted, the facts will be summarized. The appellant and

his employer drove by the deceased's home at approximately eight o'clock in the morning, and the deceased joined them in a can of beer. That afternoon the appellant returned alone in his pickup truck with a carton of six cans of beer; the deceased sat in the pickup; one of his brothers stood on the outside, and the three of them consumed the beer. It was during this visit that the appellant inquired the identity of one of the women sitting in the yard, and she was called to the pickup and identified as deceased's daughter. Apparently her husband was irritated at this incident because he came to the pickup and notified the appellant that the woman to whom he had been talking was his wife. According to the appellant's testimony, during this visit the deceased gave him a dollar, with instructions to buy some more beer, and when he returned with the beer the deceased was not around the front of the house; and one of the men told the appellant to drive on and threatened to jerk him out and stomp him if he did not leave. He stated that he went home, sat on the steps at his back door, and thought about being ordered to leave and what the deceased might think of his misappropriation of his dollar, secured his .22 rifle and returned to the deceased's home and got out of his pickup with the rifle in his hand. According to the appellant, the man who had ordered him to leave started toward his pickup.

According to some of the state's witnesses, the appellant said, "Stand back, or I will kill every damn one of you," and shoved deceased's wife back when she tried to get him to give her the gun. Be that as it may, it does appear that at this juncture the deceased came in the back door of his home, secured a shotgun, and proceeded to the front door. The appellant shot five times at the deceased in or near the front door. The appellant testified that the deceased shot him with the shotgun while he was in the act of shooting the deceased and that someone shot at him again as he was driving away. Members of the deceased's family testified that the deceased did not fire the shotgun but that his son picked up the gun after the deceased had fallen and shot at the appellant as he drove away and that the shotgun was fired only once. Some of the shotgun pellets took effect on the appellant's person.

The appellant drove to a nearby store; the sheriff was called; he came to the store and placed the appellant under arrest.

The jury rejected the appellant's claim of self defense, and we find the evidence sufficient to sustain its verdict. We shall discuss the contentions advanced by appellant's able counsel.

They contend that reversible error is reflected by the testimony of a deputy sheriff as to a conversation had with the appellant on the way to Tyler in which the appellant "told me that he didn't have the gun in the pickup at that time but he went home and got the rifle and returned and shot" the deceased. The court admitted the statement on the theory that it was res gestae. While we do not agree with the trial court's ruling, we must determine if reversible error is reflected by the admission of such evidence. Appellant contends that, because of the admission of this testimony while the state was making out its case in chief, the appellant was forced to take the stand in his own defense and explain the same.

The appellant relies upon Trollinger v. State, 153 Texas Cr. Rep. 364, 219 S.W. 2d 1018, which holds that, where inadmissible evidence is introduced by the state, the appellant does not waive the error when he takes the stand and attempts to minimize the damage. Before this rule comes into application, it must appear that the appellant was required, under the circumstances of the case, to testify in order to explain or minimize the injury and that his testimony had that effect. Trollinger had shot a number of people, and the officer quoted him as having said that he hoped all the "s.o.b.s." out there are dead. The damaging effect of this testimony is apparent. Trollinger, in an effort to minimize the injury, testified and denied the officer's testimony, explaining that all he had said was that "they may die." Now, let us examine the situation in the case at bar.

The deputy sheriff stated that the appellant told him he did not have the rifle with him but went home and got it. The appellant did not deny this testimony but did testify to far more damaging facts when he said that he went home, sat on the back steps and thought about having been required to leave the deceased's home, armed himself with a rifle and returned to deceased's home "to talk to him about that fellow that came out to run me off."

In this case, it is apparent that the appellant took the stand because the state's witnesses had denied that the deceased had fired the shotgun, and the appellant needed this evidence to give substance to his plea of self defense.

Appellant next contends that reversible error was committed by the asking of the following question of the deputy sheriff mentioned above: "Mr. Jernigan, did you have a conversation with Mr. Phillips (the appellant) on that occasion with refer-

ence to any two other peace officers who were employed by the City of Tyler?" Appellant's objection was sustained, and the witness was not permitted to answer the question. The question was so phrased that it did not convey to the jury any inadmissible information and, in view of the fact that it was not answered, no reversible error is shown.

Appellant next complains of that portion of the court's charge wherein he submitted the law of self defense and the failure to grant his requested charge. The two cases relied upon by the appellant were affirmed by this court. The court's charge did not limit the appellant's right of self defense and, under the facts before us, constitutes a fair presentation of such defense.

The following argument was objected to:

"Now, Ladies and Gentlemen of the Jury. I submit to you that when you return your verdict in this case, that you say to him by your verdict, 'Charles Phillips, you can't get half high, and use that as an excuse to go to an old man's house and kill him and shoot him down like a dog' * * * *."

We are not cited any authority in support of appellant's contention that this constituted reversible error. We do observe that, according to all the evidence, the appellant had consumed a number of bottles of beer preceding the homicide. In Housden v. State, 131 Texas Cr. Rep. 256, 98 S.W. 2d 181, we held that reversible error was not reflected by argument of state's counsel when he charged the accused with shooting the deceased and then leaving him "to wallow in the sand like a hog."

We are next presented with the following argument which appellant contends should bring about a reversal of this conviction:

"There was testimony that there was bullet holes all through that door. Mr. Glass said that there was testimony concerning bullet holes in the screen door, but the screen door is not in evidence. Mr. Glass asked the woman if she would be willing to bring the screen door up here. He undoubtedly didn't send for it and didn't ask any more about it, but that screen door would have answered and verified and corroborated that situation.

"MR. GLASS: That is beyond the facts in this case, and we object to it and move the Court again upon that basis for a mistrial. It is highly prejudicial, beyond the record.

"THE COURT: Sustain your objection and you Ladies and Gentlemen will not consider the statement about what the screen door would have shown. You have heard the testimony with reference to·the screen door. Go ahead with your argument. Overrule your motion for mistrial."

The trial court acted properly in withdrawing the last portion of the argument from the jury's consideration, and we must determine if he erred in refusing the motion for mistrial. While the deceased's wife was on the stand, Mr. Glass (one of the appellant's attorneys) asked her on two occasions if she would be agreeable to have the screen door removed and brought to court, and she answered that she would; but the matter was not pursued any further. The portion of the argument which was withdrawn did not assert any fact not in evidence but was the assertion that had the door been brought to court it would have settled any conflict concerning the same which may have existed in the evidence, and we conclude that the court did not err in failing to grant the mistrial.

Appellant also urges that the court erred in permitting state's counsel to ask appellant the following question:

"You are the same Charles L. Phillips who was convicted in the District Court of Smith County, Texas, on October 22, 1953, of the felony offense of driving while intoxicated, a motor vehicle, and received a punishment of five years in the penitentiary?"

He contends that the state should be limited to asking the appellant if he ever before had been convicted of a felony and not permitted to show the nature of the felony. Counsel concede that they can find no authority in support of their contention, and we are aware of none.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge, dissenting.

Upon the submission of this case it was assigned to the writer herein. I made an examination of the record and prepared and presented to my brethren for approval the opinion hereinafter set out, wherein the judgment of the trial court was ordered reversed.

My brethren refused to agree with my opinion and have now adopted the opinion prepared by Presiding Judge Morrison as the majority opinion of the court.

I have decided to file, as my dissent, the opinion which I had prepared, in view of the fact, to me, that the majority opinion does not fully reflect the record as I understand it, especially in respect to the reversible errors reflected thereby.

The opinion I prepared is as follows:

The offense is murder, with punishment assessed at confinement in the penitentiary for life.

There is not the least suggestion of a motive for this killing. The deceased and appellant were good friends and beer-drinking pals.

Yet from the state's standpoint appellant killed the deceased without the slightest reason or excuse by shooting him, from a position in the yard just outside deceased's home, with an automatic .22 rifle while he (the deceased) was inside and at the front door of his home.

The appellant admitted the killing but said that it was in self-defense from the actual attack of the deceased and that deceased shot him with a shotgun, several shots from which hit him.

The state's testimony shows that the shots which struck the appellant were fired by a son of the deceased after the firing of the rifle shots by appellant as he (appellant) was fleeing from the premises and that at no time did the deceased, himself, shoot at him.

The foregoing is deemed a sufficient statement of the facts for a determination of the legal questions presented by this record.

Chief among those questions are the testimony of one of the arresting officers as to a statement made by appellant to him after the killing and while under arrest, and the asking of a question as to whether appellant made another and additional statement at that time.

The law prohibits the use in evidence of oral statements made by the accused while under arrest. Statements so made are inadmissible and become admissible only when they come within recognized exceptions to that rule. One of these exceptions is that statements of an accused while under arrest are admissible if they come within the rule of res gestae—by which is meant the event speaking through the witness, and not the witness speaking of the event.

It is the state's position that the statement made and the testimony sought to be elicited by the question asked the officer at the trial were admissible under the rule of res gestae.

One of the essential elements of res gestae is that of spontaneity and that the statement be the natural and spontaneous outgrowth of the main fact. Any idea of premeditation must be excluded. 18 Texas Jur., p. 297, Sec. 182.

Of necessity, then, the facts existing at the time the statement is made must be looked to in determining whether it comes within the rule of spontaneity, or, if in the time elapsing, opportunity for study or premeditation arises.

The two stores to which appellant went after the killing were located in Flint, one operated by E. W. Garner and the other by E. A. Morrow. The stores were on the same side of the road and about one hundred feet apart, with a cross street separating them.

The record is not clear as to which store appellant first went when he arrived in Flint.

The witness Morrow testified that appellant came to his store carrying a rifle. In conversation with Morrow, appellant said to him:

"I'm sorry, but I just killed a man." Morrow then said to appellant:

"Well, Charles, maybe you didn't, maybe he is not dead." Appellant replied:

"Well, I hope not, but I shot him five times."

Morrow further testified that at the time appellant told him "that he had shot a man," he also said "he shot him first and he

just had to shoot 'them' is what he said, the word he used 'them.' ''

Appellant had a rifle in his hand at that time. His wife and children were in the store when he arrived, and appellant said he wanted to talk to "the boy." Any conversation they may have had is not shown. Appellant gave the rifle to his wife and she left the store, as did the appellant.

The testimony next places appellant at the store of Garner. As stated, we are unable to determine if this was before or after his appearance at the Morrow store.

Garner testified that appellant drove to his place of business in a red pickup truck, got out, started into the store, and said to him:

"Ed, I want you to call the Sheriff. I just shot a man down."

On the call placed by Garner to Sheriff Ashcraft, in Tyler, appellant said to the sheriff:

"Mr. Ashcraft, I just shot a man down, and I want you to come down here and get me. Come yourself and not send *no* deputies after me."

Appellant also told the sheriff he would be at the Garner store, and he remained there until the sheriff arrived.

In the interim, appellant talked with Garner and, among other things, told him there was a carton of beer in the back of the truck.

According to Garner, appellant had a .22 rifle in his hand when he first came to his store. He delivered the rifle to Garner, who unloaded it and took therefrom four or five shells.

Sheriff Ashcraft said that he and his deputy, Jernigan, arrived at the Garner store within ten or twelve minutes after receiving the telephone call from appellant. As Ashcraft drove up, the appellant came out the front door toward him. Upon being asked "what was wrong," appellant said that he had just shot "Mr. Ellis" at "Ellis's house," and that the gun was in the store. The sheriff then left appellant in the custody of the deputy sheriff, went into the store, got the rifle, and returned with it to the car.

The three—the sheriff and his deputy in the front seat and appellant in the back seat—started by automobile to Tyler. According to the sheriff's testimony, on the way there they "turned off and drove to Ellis's (deceased's) home. We didn't drive up to the house, we stopped down at the road some 50 or 75 yards from the house, and turned around, and I got out and went to the house, and Mr. Jernigan brought Phillips (the appellant) on to town."

As Jernigan continued the trip with appellant to Tyler, he engaged appellant in conversation. Upon the trial of the case and upon direct examination, Jernigan was asked by the state:

"Mr. Jernigan, did you have a conversation with Mr. Phillips on that occasion with reference to any two other peace officers who are employed by the City of Tyler?"

After much discussion and the adducing of testimony in the absence of the jury, appellant's objection to the question was sustained.

Following the above, the state was permitted to prove by the witness Jernigan the following conversation with the appellant on the way to Tyler.

"We were talking about the incident that had happened, and I asked him if he had the rifle in the car, in the pick-up at the time he went to Ellis's (deceased's) the first time * * * He told me no that he didn't have the gun in the pickup at that time, but he went home and got the rifle and returned and shot Hugh Ellis."

The state insists that the question propounded sought to introduce a res gestae statement and that the statement of appellant, as introduced, was a part of the res gestae and was therefore admissible as an exception to the rule prohibiting the introduction of statements of an accused while under arrest.

Any idea that the statement was spontaneous on the part of appellant is definitely excluded.

This record has been examined for some testimony by which the time elapsing between the killing and the statement may be said to be fixed with some degree of definiteness.

The state's witness, Edna Green, the daughter of the de-

ceased and a witness to the killing, testified that after the shooting she went to Morrow's store at Flint and there, about forty minutes after the shooting, saw the appellant seated in the sheriff's automobile across the street in front of the Garner store.

From that time until the appellant's statement was made to Jernigan, the sheriff's car had been driven within a short distance of the home of the deceased, where the sheriff left the car and appellant had been taken on toward Tyler by the deputy sheriff. It is entirely reasonable to say that over an hour elapsed between the time of the killing and the making of the statement.

In addition to the element of time involved, the fact that appellant had engaged in conversations with his son and, probably, his wife, and Morrow, Garner, and Ashcraft, prior to the statement to Jernigan, showed that the statement was a narration of a past event and not the spontaneous statement of res gestae.

The statement was not res gestae and was therefore inadmissible. In support of this conclusion, see Branch's P.C., 2d Edition, Sec. 108, Vol. 1, p. 123, and also: 18 Texas Jur., p. 297, 299, Secs. 182 and 183; Grimes v. State, 154 Texas Cr. Rep. 199, 225 S.W. 2d 978; Scott v. State, 132 Texas Cr. Rep. 517, 105 S.W. 2d 242; Wright v. State, 114 Texas Cr. Rep. 597, 26 S.W. 2d 236.

In determining when a statement of an accused is or is not res gestae it is well to keep in mind the rule works both ways: both for and against the accused.

A res gestae statement of an accused which is completely exculpatory and exonerates him of any guilty connection with the crime is admissible, notwithstanding the rule against self-serving declarations. Webb v. State, 160 Texas Cr. Rep. 144, 268 S.W. 2d 136.

It would hardly be contended that any exculpatory statement appellant made to the witness Jernigan, instead of the statement that Jernigan said he made, would be admissible.

Yet if this statement made to Jernigan be res gestae, then by that same rule exculpatory statements of an accused made while under arrest and after time for deliberation and study would be admissible.

The only questions remaining for determination, then, are whether the error is one requiring a reversal of the conviction, or whether the error is waived by the testimony of the appellant.

Jernigan, who testified to appellant's statement, was the second witness in the case. The erroneous testimony was therefore put in evidence by the state upon the presentation of its case in chief.

When appellant came on to testify, he explained the presence of the rifle in his truck as follows:

("Q. Did you decide to do anything while you were at home there?) A. Yes, sir, I decided to go back and carry his beer to him, so he wouldn't think that I took his $1.00 and left with it, and then I wanted to talk to him about that fellow that came out to run me off.

("Q. Did you know at that time, that that man was a son of Mr. Ellis?) A. No, sir.

("Q. Now, did you go back?) A. Yes, sir.

("Q. Now, did you take your rifle when you went back?) A. Yes, sir, I thought I would put my rifle in my truck. I usually carry it with me a lot when I am not working, to shoot rabbits with.

("Q. And you thought you would take that back with you?) A. I thought I would take it back, so that if that fellow came out to run me off, I thought maybe I might talk to Mr. Ellis before he tried to do anything.

("Q. You went back to talk to Mr. Ellis, as I understand your testimony?) A. Yes, sir.

("Q. And to let him know that you had his beer and also to tell him what this fellow told you and to try to stop any future trouble? Is that correct? A. Yes, sir."

So, by this testimony, appellant shows that he had the rifle in his truck when he returned to the home of the deceased immediately before shooting him. Appellant admitted that he shot the deceased.

It is the rule of long standing and well founded both in law

and reason that one is not permitted to complain of evidence introduced by the state when he testifies to the same facts. Johnson v. State, 118 Texas Cr. Rep. 293, 42 S.W .2d 421; Myers v. State, 149 Texas Cr. Rep. 301, 194 S.W. 2d 91; Soble v. State, 153 Texas Cr. Rep. 629, 218 S.W. 2d 196; Sowers v. State, 157 Texas Cr. Rep. 345, 248 S.W. 2d 949; Vallee v. State, 158 Texas Cr. Rep. 387, 256 S.W. 2d 846.

But there is another rule which is equally well founded both in law and in reason—and that is that where illegal testimony has been admitted, over objection, the defendant, without curing the error in admitting it, may offer testimony to rebut, or explain such illegal testimony. Branch's P.C., Vol. 1, Sec. 119, p. 134; Willoughby v. State, 87 Texas Cr. Rep. 40, 219 S.W. 468; Trollinger v. State, 153 Texas Cr. Rep. 364, 219 S.W. 2d 1018; Reynolds v. State, 82 Texas Cr. Rep. 443, 199 S.W. 636; Moore v. State, 66 Texas Cr. Rep. 169, 146 S.W. 183.

The Reynolds case, supra, is deemed directly in point. In that case the state erroneously introduced in evidence a statement that the accused had made before the examining court, connecting her with the murder of her husband. Upon the trial she testified to practically the same facts as those contained in the statement, but she explained a feature thereof in consonance with her testimony upon the trial.

The state insisted that, by so testifying, the error in receiving the statement in evidence was cured, or waived.

In overruling that contention, this court said:

"A party does not waive errors of this sort where they are committed over his protest by taking the stand or in introducing evidence to lessen the consequences as far as may be done. The error of the court was not by this manner waived."

Now to analyze the facts in the light of the rules stated:

As has been heretofore pointed out, according to Jernigan appellant told him that he did not have the rifle when he first went to deceased's home but that "he went home and got the rifle and returned and shot Hugh Ellis."

This statement was easily susceptible of the construction which the state placed thereon—which was that appellant drove to his home, armed himself with a rifle, and returned to the

deceased's home for the purpose of killing and did kill the deceased—all in keeping with the state's contention that the killing was premeditated and committed with malice aforethought.

The jury could have very easily so construed appellant's statement to Jernigan.

The damage and prejudicial effect of Jernigan's testimony is apparent.

Appellant, through his counsel, knew that Jernigan's testimony was not admissible and that the trial court had committed error in permitting its introduction. Appellant also knew that he had an explanation of his possession of the rifle at the time of the killing, which explanation placed, or was calculated to place, him in an entirely different light before the jury than did the erroneously admitted testimony.

Now what was appellant to do? Was he to sit by and let Jernigan's testimony go unexplained, in order to preserve the error in admitting the testimony, or was he to do the best he could under the circumstances — which was to take the stand as a witness in his own behalf and give his explanation as to why the rifle was in the trunk of his car when he returned to the home of the deceased? Appellant chose the latter alternative and under the rule last above stated, did not forfeit his bill of exception nor did he cure the error in the admission of illegal evidence.

The wisdom of the rule last stated is demonstrated here, for the state ought not to be permitted to place before the jury illegal, harmful, and damaging testimony and not give to the accused the right to explain, minimize, or lessen the effect of that testimony, without waiving the error in admitting the testimony or making admissible the illegal testimony.

To here hold that the appellant cured the error or rendered the admission of the illegal testimony harmless by his testimony would be to permit the state to obtain an unwarranted advantage by virtue of its own wilful wrongdoing. Such is not right, and cannot be countenanced.

But the state, here, did not stop with getting before the jury what appellant said to deputy sheriff Jernigan about the rifle; it also attempted and endeavored to get before the jury some

damaging statement the appellant made relative to two peace officers of the city of Tyler when it inquired of the witness Jernigan:

"Q. Mr. Jernigan, did you have a conversation with Mr. Phillips on that occasion with reference to any two other peace officers employed by the city of Tyler?"

Appellant's objection thereto was sustained and the question was not answered.

By no hypothesis of reasoning could it be said that the question asked or the answer expected thereto could have had any connection whatsoever with this killing, or could it be admissible for any purpose in this case. Yet the asking of the question implied that the appellant at that time did say something about two peace officers of the city of Tyler and, by his objection to the question, the inference was clearly left that what was said was detrimental to the peace officers and prejudicial to him.

The question should not have been propounded, and appellant should not have been placed in the position of having to object to a question which was obviously improper and prejudicial and one to which the answer would have redounded to his injury.

In the case of Ballard v. State, 97 Texas Cr. Rep. 455, 262 S.W. 85, this court said:

"Where the mere putting of a question conveys to the jury information which cannot be properly laid before them, thus tending to render the trial unfair and illegal, a verdict so obtained stands on exactly the same basis as if the illegal evidence were introduced by error in ruling by the court. But where the incompetent evidence conveys no information other than that contained in testimony not objected to the verdict will not be set aside."

The question here asked comes squarely within the rule stated. The information conveyed by the question could not have been properly introduced in evidence. Appellant was under arrest, being at the time conveyed by the peace officer to jail approximately an hour after the killing. Before being taken to jail, appellant had conversed and mingled with several other persons.

The facts of this case nowhere suggest that peace officers of

the city of Tyler were in any way involved or that appellant's relation to them was material in this case. The question asked was relative to a matter entirely foreign to this case.

Under the record as here presented the inadmissible testimony introduced over appellant's objection and the asking of the prejudicial question was prejudicial error.

To the above, I now add the following:

This appellant goes to the penitentiary for life not because of the crime he is alleged to have committed—for, obviously he has not been lawfully convicted therefor—but because of the doctrine of waiver. In other words, the majority opinion holds that he waived his rights to a fair trial and thereby he is charged with having brought about his own illegal conviction by his waiver.

A conviction can not be lawful when patent and prejudicial errors are committed.

Such condition and conviction under such circumstances are entirely foreign to my idea of that fundamental fairness which ought to permeate all criminal trials and convictions, especially those carrying the death and life-imprisonment penalties.

The state should be required to secure a conviction in accordance with law.

Now, to see just the situation and rule my brethren have here created and announced:

When the deputy sheriff was permitted, over objection, to testify to the statements appellant made while under arrest and being carried to jail, that long line of decisions and the statute, Art. 727, Vernon's C.C.P., were openly and flagrantly violated.

I do not understand that my brethren hold that no error was committed in the receipt of the testimony.

So then, the state is now, by this decision, given the green flag to openly violate established rules of evidence and the right of the accused to be tried in accordance with those rules, and by that violation get before the jury harmful evidence which the accused feels he must explain and, when he does so, he waives the error in the admission of the illegal testimony and his right

to be tried in accordance with law and established legal principles.

Has the time come in this state when the admissibility of evidence is no longer to be decided in accordance with law but is to be decided in total disregard therefor and with the idea that the accused will waive the error? It seems so. This decision of my brethren so holds.

I respectfully dissent.

### On Appellant's Motion For Rehearing

BELCHER, Judge.

It is strenuously contended that we erred in holding in our original opinion that the appellant by his own testimony waived the error in the admission of Deputy Sheriff Jernigan's testimony that appellant, while under arrest, told him that he did not have a gun in his pickup when he first went to the home of the deceased, but he went home, got his rifle and returned and shot the deceased.

Moore v. State, 66 Texas Cr. Rep. 169, 146 S.W. 183, is cited in support of the above contention. It was expressly overruled by this court in McLaughlin v. State, 109 Texas Cr. Rep. 307, 4 S.W. 2d 54.

Willoughby v. State, 87 Texas Cr. Rep. 40, 219 S.W. 468, is also cited. There we held that when testimony is admitted over appellant's objections, he may cross-examine as to such testimony without the loss of his objection. This rule is not applicable to the contention under consideration.

In Trollinger v. State, supra, relied on by the appellant for reversal, the appellant while testifying denied making the statements attributed to him by the deputy sheriff and then testified to the statement that he says he made to the officer. These statements were contradictory.

Here, the deputy sheriff testified that the appellant "told me that he didn't have the gun in the pickup at that time but he went home and got the rifle and returned and shot" the deceased.

The testimony of the appellant is substantially the same as that to which he objected. He admitted to the jury that he didn't

have the gun when he left deceased's home, but after leaving and going to his home decided to go back, got his rifle and returned to deceased's home, and thereafter shot him.

It is a general rule that an accused cannot complain of the erroneous admission in evidence of testimony when he later testifies on direct examination to substantially the same facts. 4 Texas Juris., 587, Sec. 414; McLaughlin v. State, supra; Hitton v. State, 135 Texas Cr. Rep. 67, 117 S.W. (2d) 90; Grooms v. State, 151 Texas Cr. Rep. 106, 205 S. W.(2d) 986; Flannery v. State, 153 Texas Cr. Rep.'36, 216 S.W. (2d) 980; Grooms v. State, 156 Texas Cr. Rep. 504, 244 S.W. (2d) 229; Welch v. State, 159 Texas Cr. Rep. 352, 264 S.W. (2d) 100; Lee v. State, 165 Texas Cr. Rep. 113, 303 S.W. (2d) 406;; Texas Digest, Crim. Law Key No. 1169(3).

Appellant's other contentions have been carefully considered and are overruled.

The motion for rehearing is overruled.

Opinion approved by the Court.