SON BUDDY v. THE STATE.

No. 6065. Decided January 26, 1921.

1.—Robbery—Evidence—Arrest—Confessions—Warning.

Where, upon trial of robbery, the statements of defendant were introduced in evidence which were made while *not strictly under arrest* at the time, yet, when he was suspected of crime and was questioned with reference to the offense committed by a justice of peace, while he was not warned, etc., the same was not admissible in evidence. Following Reynolds v. State, 82 Texas Crim. Rep., 443, and other cases.

2.—Same—Hearsay Evidence—Declarations of Third Parties.

Upon trial of robbery, it was error to authorize and admit in evidence the hearsay statements and conversations between third parties in the absence of the defendant.

Appeal from the District Court of Upsher. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Stephens & Sanders*, for appellant.—On question of arrest: Clark v. State, 207 S. W. Rep., 98; Patrick v. State, 74 id., 551; Oliver v. State, 197 id., 185, and cases cited in opinion.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—On question of declarations by defendant: Sanders v. State, 54 Texas Crim. Rep., 101; Jackson v. State, 33 id., 281; Moffatt v. State, 35 id., 257.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of robbery and given five years in the penitentiary.

The evidence discloses that the prosecuting witness Jones reached the town of Big Sandy and went to a boarding house kept by Bullock,

for the purpose of spending part of the night or until an incoming train arrived on which he purposed to take his departure. They put him in a room which had no fastening to it and he did not like it and left; that his objection to the room was on account of the fact it had no fastening to the door and he had in his grip some valuable papers, and for that reason he would not occupy the room. Finally a couple of parties who were present went away about the time these statements were made. Appellant introduced quite a lot of evidence to the effect that he did not leave the house that night at all; that he was suffering with a severe cold and went to bed. This, if the jury believed it, would have exonerated him. Jones testified when he left the Bullock house he went to look for another place and when he got near an old church appellant and young Bullock, and two or three parties altogether met him and that Bullock stuck a pistol in his face, and that they took his money and other things and went their way. Jones then went to the house of another witness who testified that he spent the remainder of the night with him. Jones' testimony is not as satisfactory as it might be, yet he does identify appellant as one of the parties in a way that may be questionable, but these matters are not discussed. Bullock was also indicted, and has fled the country. Nobody testifying in the case knew his whereabouts. Truesdale, with whom Jones spent the remainder of the night, was walking down the street the next day and passed defendant two or three times and said nothing to him and did not have him arrested, though he had Bullock arrested on that day. The second day, which was the 26th of the month, appellant was arrested.

One of the questions presented is that during the day of the 26th the justice of the peace sent for appellant. Appellant went to his office and was there questioned with reference to this transaction, and his statement seems to have been reduced to writing. The whole matter came up before the justice of the peace with reference to the robbery transaction. Immediately after this appellant was arrested. Objection was made to the introduction of this testimony which we think was well taken. Appellant was not strictly under arrest at the time, but he was suspected of crime and being questioned with reference to it by the justice of the peace. He was not warned. Under such circumstances this court has held in quite a number of cases that this character of testimony, either for impeachment or as original, was not introducible. See Wood v. State, 22 Texas Crim. App., 431; Reynolds v. State, 82 Texas Crim. Rep., 443; Oliver v. State, 81 Texas Crim. Rep., 529; Callaway v. State, 55 Texas Crim. Rep., 262; Pry v. State, 58 Texas Crim. Rep., 169; Simmons v. State, 79 Texas Crim Rep., 341.

A bill of exceptions also recites that while Leech and Jones were walking down the street they saw appellant off some distance, and Truesdale was permitted to testify to a conversation that occurred between Jones and himself in the absence of appellant, and, among other things, that he recognized appellant as being one of the parties who

robbed him.   The court signs this bill with the statement that the defendant had testified that James Bullock, whom the State claimed acted with defendant in the robbery, was arrested on the 25th, or morning following the robbery, and that he, defendant, passed the witness Jones, who was robbed, several times during the day of the 25th, but that he was not arrested until the 26th.   The court further states: "The clear inference from this testimony being that Jones didn't identify or recognize him on the 25th.   Under this state of the evidence I admitted the testimony complained of to bolster the witness Jones." We do not believe this qualification renders the testimony admissible. The mere fact that appellant testified that Bullock was arrested on the 25th would not authorize hearsay statements and conversations between Truesdale and Jones in the absence of appellant.   These were hearsay declarations between third parties and no way binding upon the appellant.   He was not placed in position to be called upon to answer or to make any statement about it, and in fact, so far as the record shows, he knew nothing about it.   We think this testimony was inadmissible.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*