### A. L. TROLLINGER V. STATE.

No. 24326. April 27, 1949.
State's Rehearing Denied May 18, 1949.

*H. S. Beard,* and *John B. McNamara,* Waco, for appellant.

*Gene Maddin,* Criminal District Attorney, Waco, and *Ernest S. Goens,* State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was convicted of murder and given a sentence of two years in the penitentiary.

The facts show that on May 23, 1948, in the early morning hours, a dance was held at the S. P. J. S. T. hall at a place called Elk in said county; that appellant was a constable of that county and was present with his soldier son in the bar in such hall; that the hour of 12:00 o'clock midnight had passed; that Francis Wetzel, his wife, Helen; J. B. Wetzel, a brother; Marvin Schlemmer, Henry Winkelman, who married a Wetzel, and others were at said bar; that Francis Wetzel, the deceased, desired to purchase some more beer, but on account of the late hour he was not sold any; that some loud talking and cursing were indulged in by the Wetzels and their friends. Appellant's son was in uniform and the deceased's wife, Helen, made some remarks relative to a recruiting sergeant armband on the soldier's arm. He removed the same and placed it in his pocket, and it was claimed that some cursing was then indulged in by the deceased and his companions. Eventually the appellant attempted to place J. B. Wetzel under arrest and to take him from the building. He was interfered with by the deceased, as well as others, who demanded to know by what authority he was making such arrest and where his badge was if he was such an officer. Finally the constable got these parties out of the house and then a difficulty ensued between the soldier son and Marvin Schlemmer. The officer then shot J. B. Wetzel and Marvin Schlemmer and also shot and killed Francis Wetzel, he claiming that these three men, as well as others, were ganging up on him and making an assault upon him. J. B. Wetzel and Marvin Schlemmer recovered, but Francis Wetzel died as a result of two shot wounds.

The appellant and his son then drove to the county jail at Waco and surrendered to the jailer there in about 30 or 45 minutes after the shooting. The only bill of exception in the record relates to what occurred at the jail when appellant appeared there and announced to the jailer that he desired to be admitted therein; that he was the man who had done the shoot-

ing at Elk. We quote from the bill the testimony of the jailer as follows:

"When Mr. Trollinger came to the door I let him in the jail. He told me he was the man that did the shooting.

"He didn't ask to leave the jail. I wouldn't have let him leave until I got hold of the District Attorney. I didn't consider him a prisoner from the moment he entered the jail because I didn't know the details of the shooting until I learned something about it. I wouldn't have allowed him to go out of that jail. He didn't ask to go at that time. Later on, after Mr. Maddin came down and got a statement from him, he says, 'If you all are through with me I guess we had better go, it is getting late.' It was then about 4 o'clock, and I said, 'What about that, Gene?' He says, 'Well, he will have to make bond.' And he did make bond before he was allowed to leave. That was about 4 o'clock. From the time he entered the jail until he made bond, I would not have permitted him to leave until I knew the facts of the case.

"Mr. Trollinger got to the jail door around 12:30 or 12:45, between 12 and 1 o'clock. I don't know the exact time. Mr. Trollinger walked to the door."

"(BE IT FURTHER REMEMBERED that there was no testimony introduced during the entire trial showing or tending to show that the defendant at any time made a statement, admission or confession in writing after having been warned as is required by Article 727 of the Code of Criminal Procedure of the State of Texas.) At the conclusion of the testimony of said witness Bill Surratt upon voir dire as hereinbefore set out said witness was permitted by the Court over the objections of the defendant to testify as follows:

"'I said, "Well, did you kill any of them," (referring to the three fellows the defendant said he had shot) "or do you know?" He said, "Well, I don't know, but I hope all of the sons-of-bitches are dead." ' "

This last phrase was objected to because of the fact that appellant was then under arrest at such time, had received no warning of any kind, and same was not in writing as called for in Article 727, C. C. P.

The record shows further testimony of the jailer relative to such subject as follows:

"Well, I had got a call about a shooting at Elk. I dispatched

our car out there and it wasn't but a few minutes until Mr. Trollinger and the boy came past the window. I couldn't see the boy—see who he was—and I thought Mr. Trollinger had brought somebody in that had done the shooting out there. He came up to the door and by that time I had gotten to the door. He said, 'Let me in, Bill.' I let him in and asked him something about the shooting and he said, 'I am the man that done the shooting.' I said, 'Well, did you kill any of them, or do you know?' He said, 'Well, I don't know, but I hope all of the sons-of-bitches are dead.' At that time it appeared to me he was drinking some."

We are also referred to the statement of the appellant himself given while he was on the witness stand in which he said:

"I told Bill Surratt I had to shoot three boys. He asked me if any of them were dead. Well, the boy, my son, as we came on to town—he helped load those boys there—and he said, 'Dad, that last boy you shot is already dead.' I told Bill, 'One of them is dead and the other two sons-of-bitches may die.' I didn't say I hoped they did die; I said, 'They may die.'"

It is insisted that the complained of statement is res gestae of the transaction and admissible as such, regardless of any arrest. We do not have sufficient facts to enable us to determine either the distance from the scene of the shooting, or the town of Elk, or the elapsed time in which the statement was made. We do know that Elk is not in the city of Waco, but seems to be some distance therefrom. The statement offered seems to have been elicited from appellant by means of questioning. While the presence of any one of such conditions may not deprive the statement of its spontaneity and its res gestae attributes, nevertheless, they should have some weight in determining its admissibility. We find ourselves impressed with its lack when offered as a part of the res gestae.

We next consider whether the testimony shows appellant to have been under arrest or in custody of the jailer at the time of making such statement. While it is evident that the testimony of the jailer was practically the same as that of appellant except the latter portion thereof, yet this latter portion was very damaging to appellant if the jury accepted the jailer's statement relative thereto. It is noted that the trial court appended quite a lengthy qualification of this bill, which qualification was properly excepted to by appellant's attorneys over the trial court's signature, and we are therefore relegated to the original bill minus the qualification.

The difference between "they may die", as contended by appellant, and "I hope all of the sons-of-bitches are dead", as testified to by the jailer as the words of appellant, is quite apparent and doubtless had some influence with the jury in their deliberations. We are inclined to the belief that the appellant was in custody of the officer at the time it is claimed he made such statement. For what reason other than to surrender did appellant present himself at the door of the jail? And for what other reason was he there held until he had made a statement and had made bond? It was not necessary that he continue in the presence of the jailer in order to evidence custody. See Little v. State, 100 Tex. Cr. R. 167, 272 S. W. 456; Stoker v. State, 93 Tex. Cr. R. 24, 245 S. W. 444; Buckner v. State, 52 Tex. Cr. R. 271, 106 S. W. 363. The test has been held to be whether the accused reasonably believed himself to have been in custody. See Lightfoot v. State, 117 Tex. Cr. R. 515, 35 S. W. (2d) 163. It is not necessary that the arrest he made in formal words. See Bonatz v. State, 85 Tex. Cr. R. 292, 212 S. W. 494.

In the case of Buddy v. State, 88 Tex. Cr. R. 403, 227 S. W. 323, the accused was sent for by the justice of the peace, and upon presenting himself at such office, he was questioned and thereafter placed under arrest. The statement made by him in such office prior to being arrested was held to have been inadmissible, citing Wood v. State, 22 Tex. App. 431; Reynolds v. State, 82 Tex. Cr. R. 443; Oliver v. State, 81 Tex. Cr. R. 529; Callaway v. State, 55 Tex. Cr. R. 262; Fry v. State, 58 Tex. Cr. R. 169; Simmons v. State, 79 Tex. Cr. R. 341.

In the present case, we are also of the opinion that the appellant did not waive any error, if such there was, by stating in his testimony that what he actually said was, "They may die."

We quote from Willoughby v. State, 87 Tex. Cr. R. 40, 219 S. W. 468, as follows:

"The State asserts that if any error was committed in the original admission of this statement, same was rendered harmless because, upon cross-examination, appellant brought out the same facts. We know of no decision of this Court, nor rule of criminal law, which compels an accused, when evidence has been admitted over his objection, to refrain from the right of cross-examination as to such evidence, or else be penalized by loss of his objection and bills of exception."

We think that appellant had the right to attempt to mini-

mize the damage created by such statement by giving his version of what he said at such time without losing his bill.

Undoubtedly appellant went to the county jail to surrender; or else why did he not merely telephone relative to the occurence at the dance hall? We think the statement made to the jailer should have been excluded because it was made while appellant was under arrest. However, we express the opinion that the fact that he had been drinking when he appeared at the jail door was admissible in evidence.

Because of the error in allowing the jailer to testify to appellant's statement relative to the men that he had shot and his hope in regard thereto, this judgment is reversed and the cause remanded.

### ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The District Attorney of McLennan County has filed a motion for rehearing. The contention made, which demands our consideration, challenges our holding that the appellant was under arrest at the time he made the oral statement which was held to be inadmissible against him. This matter was thoroughly considered on original hearing. It will not be necessary to re-discuss it. We wish, however, to emphasize the fact relied upon in the original opinion.

It is true, as insisted, that at about 4 o'clock, some three hours or more after appellant had reported at the jail, appellant said: "If you all are through with me I guess we had better go, it's getting late." This is construed by the state as expressing the view of Trollinger that he was not under arrest. At this time he stood before the officers in exactly the same position that he did when he asked the jailer to open the door and let him in. It is quite evident that the deputy sheriff considered him under arrest. In reply to Trollinger's statement, the deputy sheriff asked the district attorney what to do about it. It is also evident that the district attorney considered him under arrest for he replied that appellant would have to give bond.

Under this situation the state is not in position to contend that he was not under arrest. We adhere to the original holding and the state's motion for rehearing is overruled.