**Kenneth Allen McDUFF, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 40966.**

Court of Criminal Appeals of Texas.

Feb. 21, 1968.

Rehearing Denied April 24, 1968.

**548**

Godfrey Sullivan, Waco, for appellant.

Doug Crouch, Dist. Atty., Fort Worth, Frank Coffey, Dist. Atty., Charles D. Butts, Grady Hight and John A. Brady, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is murder; the punishment, death.

Appellant's first ground of error is that the court refused to make available to him at the pre-trial hearing all of the testimony of the State's witnesses who appeared before the Grand Jury and all pre-trial statements made by all of the witnesses for the State in his case. Reliance is had upon the opinion of the Supreme Court of the United States in Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973.

 It should be noted at the outset that at the pre-trial hearing appellant was furnished a complete copy of his co-defendant's confession as well as a copy of his co-defendant's testimony adduced during the examining trial and that both instruments were used by appellant's counsel during his cross examination of such co-defendant who testified for the State. No question is raised which would bring this case under the rule announced by this Court in Gaskin v. State, 353 S.W. 2d 467, wherein we discussed fully the "so called Jencks Rule"[1] as a rule of procedure in this State. See also Sewell v. State, Tex.Cr.App., 367 S.W.2d 349. As in Beeler v. State, Tex.Cr.App., 374 S.W. 2d 237, during the course of this trial on the merits, no request was made for any statement or testimony of any witness for the purpose of cross examination. Further, as in Young v. State, Tex.Cr. App., 398 S.W.2d 572, there was no showing that any grand jury testimony or statements were exhibited in the jury's presence or used by any witness.

It is appellant's position that the Dennis opinion entitles him to examine prior to trial any evidence which the State may have in its possession. We do not construe Dennis so broadly and are inclined to treat Dennis as did the United States Court of Appeals for the Ninth Circuit in Osborne v. U. S., 371 F.2d 913, cert. den. 387 U.S. 946, 87 S.Ct. 2082, 18 L.Ed.2d 1335; reh. den. 389 U.S. 891, 88 S.Ct. 23, 19 L.Ed.2d 207, by comparing the facts in the case before us with the five circumstances detailed by the Supreme Court which required a reversal in Dennis.

We compare these circumstances with the facts of this case:

1. In the instant case the events all took place within four months of the grand jury testimony and trial testimony instead of the one to eight years prior to the grand jury testimony and the eight to fifteen years prior to the trial testimony in Dennis.

---

1. See also 18 U.S.C.A. § 3500.

2. Instead of motions involving testimony given by four of eight government witnesses, only one of twenty was specifically involved here.

3. The testimony of Roy Dale Green, appellant's confessed accomplice, was corroborated thoroughly by other witnesses and by written and physical evidence.

4. While Green was an accomplice, the Court properly charged the jury on the law of accomplices and their testimony, and the jury resolved the credibility of the accomplice witness against appellant believing the accomplice's version of the events of the night in question. The evidence adduced corroborated the accomplice, who was neither a paid informer, nor had reason to be a hostile witness as in Dennis.

5. There was no uncertainty as to details in the testimony of the State's witnesses as there was in Dennis.

We are aware of the decision of the U.S. Court of Appeals for the District of Columbia in Allen v. United States, 390 F.2d 476. We have concluded that such case is easily distinguishable since no confession of the accused was introduced in evidence in this case. Cf. United States v. Youngblood, 2 Cir., 379 F.2d 365.

Furthermore, appellant has made no allegation that the State was suppressing evidence favorable to him requiring disclosure of the grand jury testimony. See United States v. Margeson, D.C., 261 F. Supp. 628. We note further that Article 39.14, Vernon's Ann.C.C.P. does not make "written statements of witnesses" available under our discovery rule.

■ Appellant's second ground of error relates to the recovery from his automobile after his arrest of a shirt shown to belong to the deceased. In order to demonstrate the factors which impelled the arresting officers to search, a rather lengthy discussion of the facts known to them prior to the search will be undertaken. These facts had two separate geographical origins. At approximately 8:00 a.m. on Sunday, October 17, the bodies of the deceased and another boy who had been shot were viewed by Chief Deputy Sheriff Brown in his county of Tarrant. At some time prior to 5:00 p.m. on the same Sunday, Sheriff Elliott of Robertson County talked to one Richard Boyd of his county. This conversation caused Sheriff Elliott to file a complaint against Roy Dale Green, also of his county, and to arrest him as a material witness to a shooting in Tarrant County. Following this, Sheriff Elliott talked by telephone with Chief Deputy Sheriff Brown of Tarrant County. It would be testing the credulity of the most gullible to assume that they merely discussed the weather, because immediately following the conversation, Sheriff Elliott in company with his fellow Sheriff Pamplin of Falls County went in search of appellant. They remained in what they considered to be positions of obscurity until approximately 11:00 p.m. that night, when appellant drove up to the house where they were maintaining their vigil. The lights of appellant's automobile demonstrated that their positions were not too obscure, because appellant, who knew both officers, left the scene in great haste upon observing them, declining to pay heed to Pamplin's order to halt. Appellant's automobile was literally shot out from under him by the sheriffs, and he transferred to a pickup truck in which he was riding at the time of his arrest some five minutes later. Minutes thereafter, appellant's shot-up automobile was searched. The sheriffs in charge of the pursuit, arrest and search stated that they were in possession of a warrant number for appellant which they had received from the Tarrant County Sheriff's office, together with the assurance that a telegraph warrant for appellant's arrest was on the way.[2]

2. These facts are far stronger than were before this Court recently in Weeks v. State, 417 S.W.2d 716, cert. den., Weeks v. Texas, 389 U.S. 996, 88 S.Ct. 500, 19

**550**

Aside from the above, Sheriff Pamplin testified that the search of appellant's automobile was made with appellant's consent. Appellant, while testifying in his own behalf, denied having given consent, but stated that if the officers had asked for permission, he would have freely given the same, because, according to his testimony, he had nothing to hide.

■ Appellant's third ground of error is that fundamental error was committed when a female bailiff made intoxicating liquor available to the sequestered jury who tried this case. As alarming as this question would appear at first blush, when considered in the light of the facts adduced and the law as pronounced by the Legislature, it becomes relatively simple. One of the lady jurors had packed her personal belongings in a bag for a contemplated journey and had placed therein a bottle of intoxicant (the size of which is not shown). After being selected to serve on this sequestered jury, she requested a female bailiff to secure her bag for her. On Saturday night, three days prior to the jury's first ballot, this lady juror allowed other members of the jury to take a sip of her supply of "needful" while in their private quarters, but never while in the room used by them for the purpose of deliberation. While Article 36.21, V.A.C.C.P. provides that no intoxicating liquor should be furnished a juror, the Legislature has further provided in Article 40.03, Sec. 7, V.A.C.C.P. that "The mere drinking of liquor by a juror shall not be sufficient ground for new trial." We find no merit in appellant's claim.

Appellant's last ground of error is that the juror Pearson joined in the ultimate jury verdict only because of intimidation from his fellow jurors. We find ourselves in complete accord with the conclusion

reached by the trial court at the conclusion of the hearing on Motion for New Trial that the juror Pearson was at such hearing attempting to impeach his own verdict.

Finding no reversible error, the judgment is affirmed.

L.Ed.2d 494, wherein we said: " * * * (I)t is apparent that the test as to probable cause is the information known to the officer who requests another officer to effect an arrest * * * If the requesting officer is in possession of sufficient knowledge to constitute probable cause, then he need not detail such knowledge to the arresting officer. In other words, if the officer who initiates the request for arrest is in possession of sufficient knowledge to constitute probable cause, then he may transmit to the officer who makes the arrest only such information as is necessary for him to know who is wanted."