Argued May 16, affirmed July 18, reconsideration denied August 30, review denied December 19, 1978

## STATE OF OREGON, *Respondent,*

*v.*

## CHARLES RICHARD CHRISTIAN, *Appellant.*

### (No. C 77-01-00433, CA 8839)

581 P2d 132

Marianne Oswald, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant appeals his conviction for manslaughter. ORS 163.118. He assigns as errors denial of a motion to suppress evidence allegedly obtained as a result of an illegal arrest and the failure to give a cautionary jury instruction on eyewitness identification testimony.

The victim entered a grocery in Portland, on December 28, 1976, at approximately 5:30 p.m. She was bleeding from her mouth and throat. She asked a store employee to call an ambulance, and then she slumped to the floor in front of the counter and died. An autopsy disclosed that a stab wound through a large artery in the neck was the cause of death.

Police contacts with store personnel and people in the neighborhood revealed that the victim had two close acquaintances, the defendant and a man named John Allen. Occupants of the dwelling inhabited by John Allen indicated that he had left the city some 10 days before the killing, and the investigation began to focus on the defendant. A bartender at a bar near the grocery reported that he had seen a man who resembled the defendant at about 2:30 p.m. on the day of the crime. A woman who knew both defendant and the victim saw them at approximately 4:30 p.m. in a tavern, located at N.W. 21st and Glisan, within two blocks of the grocery. Another person gave the victim and an unidentified man a ride from the tavern to a restaurant across the street from the grocery just before the killing. Shortly after the death defendant was seen hitchhiking alone on the corner of N.W. 21st and Glisan. At approximately 6:30 p.m. a witness saw defendant at a bus stop in downtown Portland. The witness said defendant told him that he was on his way to Dammasch Hospital for treatment. The police confirmed that he had checked into the hospital that evening and had been examined.

On January 3, 1977, after the information summarized above had been reported to the district attorney, defendant was charged by information with hindering prosecution (ORS 162.325(d)),[1] and a warrant was issued for his arrest. On learning of the warrant, defendant turned himself in to the district attorney's office. A police officer drove the defendant to police headquarters. He was read the *Miranda* warnings, and he indicated by his signature on the warning card that he understood them. He said he would answer questions about the homicide without an attorney. When police officers detected inconsistencies in his version of his time spent with the victim just before her death, they asked if he would take a polygraph test. He was again advised of his rights and was told that the polygraph results could not be introduced in court against him. The defendant agreed to take the test. During the test or perhaps shortly after (the record is not clear), he stated that he had killed the victim and wanted to tell all he knew. He was never booked nor arraigned for hindering prosecution. His jacket, which appeared to be stained with patches of blood, was seized.

Prior to trial, defendant moved to suppress his confession and jacket on the ground that they were fruits of an illegal arrest. Defendant's motion was denied. He was tried for murder. Both his jacket and the confession were introduced at trial. He was found guilty of manslaughter.

---

[1] ORS 162.325(d) provides that a person commits the crime of hindering prosecution if he:

"Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person."

ORS 162.325 replaced the accessory after the fact statute, former ORS 161.230, which provided in part:

"All persons are accessories who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with the intent that he may avoid or escape from arrest, trial, conviction or punishment."

■ The state concedes that the arrest warrant on the hindering prosecution charge was invalidly issued because the affidavit was not based on information shown to be reliable and credible. The district attorney's information alleged that defendant had hindered a prosecution by withholding eyewitness testimony in order to protect an unknown suspect. The theory underlying the information appears to have been that defendant was withholding his testimony to protect himself.[2] To give ORS 162.325 that interpretation would mean that any person suspected of a crime who does not turn himself in (and perhaps confess) is subject to prosecution for hindering his own prosecution. Even without the concession about the warrant, we would not be able to find the charge supportable. *See State v. Clifford,* 263 Or 436, 502 P2d 1371 (1972). The state, however, argues that the existence of probable cause to arrest for homicide validated defendant's arrest.

■■ It is established that

"* * * the fact that a police officer articulates his subjective reason for arresting or searching that happens to be invalid is irrelevant if a court later concludes that a reasonable person, viewing the facts objectively, would have had probable cause to arrest or search. * * *" *State v. Carter/Dawson,* 34 Or App 21, 29, 578 P2d 790 (1978), *rev pending,* and cases cited therein.

Viewed objectively, the facts in the instant case support probable cause to arrest for homicide. In *State v. Murphy,* 2 Or App 251, 465 P2d 900, *rev den, cert den* 400 US 944, 91 S Ct 246, 27 L Ed 2d 248 (1970), we found probable cause for arresting the defendant for murder based upon the following facts: The bedroom in which defendant's wife was found dead showed no

---

[2] A police detective testified that the information for hindering prosecution was obtained because defendant had not come forward to speak. Appellant offers the following appropriate comment:

"* * * The state's theory in this instance takes the strange turn that the defendant was simultaneously the suspected principal who committed the crime, the accessory who suppressed physical evidence (himself), and was in fact the physical evidence which was suppressed."

signs of disturbance; defendant had been at his home on the night of the murder; throat lacerations and abrasions indicated to detectives that the victim had been strangled; and defendant and the victim had had a stormy marriage. The facts known to the authorities in this case are well within the indicia of probable cause in *Murphy.* The victim in this case was stabbed in the vicinity of her residence; she had been seen with the defendant up to an hour prior to the stabbing and probably even closer to the time; she and the defendant had been reported as having a violent relationship;[3] the defendant was seen in the vicinity shortly after the killing; and the defendant had checked himself into the mental hospital after the incident. We hold that there was probable cause to arrest. Because we so hold, we need not consider the other arguments made.

■ Defendant's second assignment is the trial court's denial of a cautionary eyewitness instruction similar to that discussed in *State v. Ollison,* 16 Or App 544, 555, 519 P2d 393 (1974), and *State v. Calia,* 15 Or App 110, 114, 514 P2d 1354 (1973), *rev den, cert den* 417 US 917, 94 S Ct 2621, 41 L Ed 2d 222 (1974).[4] The burden of proof rests on a defendant to show prejudice from denial of an instruction. The overwhelming evidence of defendant's guilt and his detailed confession at the trial, together with the otherwise complete and un-

---

[3] The relationship was marked by at least two incidents in which the victim stabbed defendant.

[4] We have approved the the following instruction as a correct statement of the law:

" ' "In this case, there has been eye witness identification of the defendant. When you consider the weight to be given such testimony or the reliability of such evidence, you should consider the similarity [sic; familiarity?] of the witness with the defendant, the opportunity the witness had to make an identification, taking into consideration such matters as time, height, [light,] movement, the number of persons present and the excitement attending the event or the occasion, the susceptibility of the witness through suggestion of others or other

challenged instructions, preclude a determination that the trial court's omission was prejudicial to defendant.

Affirmed.

---

groups, and the period of time that elapsed between the initial observation and the final identification." *State v. Ollison, supra,* 16 Or App at 549; *State v. Calia, supra,* 15 Or App at 115.