Billy Ray DOTSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–81–014–CR.

Court of Appeals of Texas, Austin.

Feb. 3, 1982.

Philip N. Smith, Cameron, for appellant.

Mark M. Humble, County Atty., Cameron, for appellee.

PHILLIPS, Chief Judge.

This is an appeal of a felony theft conviction, on a plea of not guilty, in a trial before a jury. Punishment was assessed by the jury at four (4) years imprisonment.

Appellant is before the Court on a single ground of error, that being the trial court erred in failing to sustain appellant's timely motion to suppress evidence obtained as a result of an allegedly unlawful warrantless arrest.

We overrule the appellant's ground of error and affirm the conviction.

Hudson's Appliance Store in Cameron had been plagued by a series of thefts. The owner, Mr. C. W. Hudson, suspected his sole

employee, Ray Melton, was involved in the losses. During business hours, Melton was the recipient of repeated phone calls from convicted felon Billy Ray Dotsey, at the rate of approximately four calls a day. Occasionally, Dotsey would represent himself to be Melton's brother or others. Hudson recognized Dotsey's voice, however, and his suspicions aroused, began monitoring incoming calls. A former employee of Hudson's with a history of theft offenses, Dotsey began to frequent the store with no apparent purpose in mind.

On the morning of November 7, 1980, Hudson answered yet another of Dotsey's disguised telephone calls for Melton. Listening in on the extension, Hudson overheard Dotsey identify himself and then urge Melton to help him steal a stereo and a television. In another plea later that day, Dotsey requested that Melton stash the stereo out amongst some old refrigerators in the store yard, as had been their practice in the past, and Dotsey promised to come by, after store hours, and pick it up.

Hudson confronted Melton with the information he had acquired and Melton confessed to his participation in the thefts. Hudson pledged his willingness to forego charges against Melton provided he aid the authorities in the capture of Melton's confederate. Melton agreed and proceeded to outline the procedure used to steal the appliances. Hudson and Melton then prepared the selected stereo for future identification by scratching distinctive markings onto the component, taping Hudson's name onto the stereo, placing it in a specific box, and taking particular note of the serial number.

Hudson telephoned the Cameron police and, when Officer Holmes arrived, Hudson and Melton explained the situation and apprised the officer of the stereo's location. The store usually closed at 5:00 p. m. and Dotsey was not expected to arrive until after 11:00 p. m., so Officer Holmes told Hudson he would return after supper. Hudson checked the stereo once more be-

fore he closed the shop but when Officer Holmes reappeared at approximately 6:30 p. m., the stereo had vanished. Holmes immediately contacted the Rockdale Police and the Milam County Sheriff's Office, relating the information at his disposal and from whence it came, including a description of the stereo box and Dotsey's car.

Officer Murphy of the Rockdale Police stopped Dotsey's car on a public highway at approximately 10:30 that evening. Upon ascertaining the driver to be Dotsey, Officer Murphy requested he follow him down to the station to speak with Deputy Sheriff Harris. Dotsey acquiesced and, upon his arrival at the Rockdale station, Deputy Harris advised Dotsey of the charges against him and of his *Miranda* rights. After waiving his rights, Dotsey first denied knowledge of the stolen stereo. However, when confronted with the revelation Melton had already made a statement to the police implicating Dotsey, he admitted he had the stereo in his trunk though he still denied he had participated in its theft. Following Dotsey's exculpatory statement, in which he gave the police oral consent to search his car, Deputy Harris read to him the completed "Permission to Search" form, which Dotsey also read and then signed.

Dotsey, his keys in hand, led the police officers out to his car and opened the trunk for them. Inside was discovered the distinctively marked stereo taken from Hudson's Appliance Store, and following Dotsey's statement, he was formally placed under arrest.

Appellant alleges he was arrested at the moment he was stopped by Officer Murphy and that such warrantless arrest was without probable cause. The evidence deduced from the subsequent consent search of Dotsey's vehicle is claimed to be "poisonous fruits"[1] of that arrest and, therefore, improperly admitted at trial. The consent, itself, is alleged to have been illegally induced by the false representation of the existence of a co-conspirator's confession.

1. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *accord, Woods v. State*, 466 S.W.2d 741 (Tex.Cr.App.1971); *Young v. State*, 447 S.W.2d 911 (Tex.Cr.App.1969).

■ Multiple issues were presented to the Court by the appellant's single ground of error, and such may be deemed multifarious and, therefore, not in compliance with Tex.Code.Crim.Pro.Ann. art. 40.09 § 9 (Supp.1980–81). However, in the interest of justice, the Court will review the ground and arguments presented. *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980).

■ The first question is whether, on the night of November 7, 1980, the officers of Cameron, Rockdale and Milam County had probable cause for the warrantless arrest of Billy Ray Dotsey. The constitutional test for probable cause is whether, at the instant of arrest, the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information warrant belief by a prudent person that a crime has been or is being committed by the arrested person. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), (citing, *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *United States v. Worthington*, 544 F.2d 1275 (5th Cir.), *reh. denied*, 548 F.2d 356, *cert. denied*, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977); *Lewis v. State*, 598 S.W.2d 280 (Tex. Cr.App.1980). The test is an *objective* rather than subjective one and, therefore, the officer's failure to recognize the moment probable cause was acquired is not determinative. *United States v. Garrett*, 495 F.Supp. 159 (S.D.Tex.1980).

■ If Officer Holmes, who spoke directly to Hudson and Melton, had probable cause to arrest, then so did those officers to whom the existence of probable cause was transmitted. The measure for probable cause where one officer requests another to intercept and arrest is the information known to the *requesting* officer. *Green v. State*, 470 S.W.2d 901 (Tex.Cr.App.1971).[2] If he possesses sufficient facts to constitute probable cause, he need not relate them in the entirety to the arresting officer, but only such information as is necessary for the arresting officer to know who is wanted. *Myre v. State*, 545 S.W.2d 820 (Tex.Cr. App.1977); *Guzman v. State*, 521 S.W.2d 267 (Tex.Cr.App.1975); *Turner v. State*, 499 S.W.2d 182 (Tex.Cr.App.1973); *Piper v. State*, 484 S.W.2d 776 (Tex.Cr.App.1972); *McDuff v. State*, 431 S.W.2d 547 (Tex.Cr. App.1968).

Appellant alleges the information used to constitute probable cause was based on the hearsay of Hudson and the *Aguilar*[3] test for the reliability of the informant must be utilized.

■ The *Aguilar* test, however, applies only to professional, anonymous, or criminal informants and not to the identified citizen bystander, eyewitness, or victim of the crime. *United States v. Bell*, 457 F.2d 1231 (5th Cir. 1972); *Pendergrast v. United States*, 416 F.2d 776 (D.C.Cir.1969), *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969); *Oliver v. State*, 414 S.W.2d 679 (Tex.Cr.App.1967).

■ Mr. Hudson, an established businessman in the community, was both the owner of the stolen property and a witness to the criminal conspiracy. As an identified citizen who purported to be the victim of, and witness to, a crime, probable cause existed from the moment the underlying circumstances demonstrating his first-hand knowledge were made known to Officer Holmes

---

2. Officer Holmes did not specifically request the arrest of Dotsey but that he be brought in for questioning, as Holmes was "fairly certain" Dotsey had perpetrated the theft. For the purposes of probable cause, this distinction is not material, as when probable cause for an arrest exists, the fact further investigation is instituted prior to arrest does not impinge upon the probable cause already established. *See State v. Christian*, 35 Or.App. 339, 581 P.2d 132 (1978); Dix, *Mistake, Ignorance, Expectation of Benefit and the Modern Law of Confessions*, 1975 Wash.U.L.Q. 275 (1975).

3. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

Although an affidavit may be based on hearsay information ... the magistrate must be informed of some of the *underlying circumstances* from which the informant concluded the [evidence is] where he claimed [it is] and some of the underlying circumstances from which the officer concluded that the informant ... was "*credible*" or his information "*reliable*." [Id. at 114–15, 84 S.Ct. at 1513–14. (emphasis added) ]

and whether he had supplied reliable information to the police in the past became irrelevant. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Mena v. State,* 504 S.W.2d 410 (Tex. Cr.App.1974); *Cf., Frazier v. State,* 480 S.W.2d 375 (Tex.Cr.App.1972) (in the circumstances of a search warrant, the recitation of hearsay of a known, named person in the affidavit was deemed sufficient probable cause). The witness' veracity may be assumed. *Mena v. State, supra.*

 The reasoning behind the presumption of reliability on the part of the citizen witness is the lack of any apparent motive to falsify and the society's need to encourage civic responsibility. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 275, 29 L.Ed.2d 723 (1971); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Rollins,* 522 F.2d 160 (2nd Cir.), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1975). Although Dotsey was a former employee of Hudson's, materially impeaching circumstances were lacking as the disassociation had been amiable and Dotsey had, subsequent to his employment, purchased several items of furniture from Hudson. Relations were such that Officer Holmes could reasonably surmise Hudson had no ulterior motive in naming Dotsey as Melton's co-conspirator.

 Hudson apprised Officer Holmes of the conspiracy to commit theft plotted against him by his employee, Ray Melton and Dotsey. He explained he had recognized the voice of the appellant, had listened in on the phone conversation, had confronted his employee with his evidence, and that his employee had admitted to the conspiracy. Officer Holmes witnessed the placement of the stereo in accordance with the conspirators' plans and appellant's instructions, and later discovered the stereo

had been removed in accord with the plan; albeit, somewhat ahead of the time resolved between the conspirators. Additionally, Officer Holmes gained confirmation of Hudson's narrative through his interview with Melton.[4]

 Probable cause to arrest having been established, a determination must be made as to whether exigent circumstances justifying a warrantless arrest existed.

Credible information warranted the belief a felony had been committed and the investigation had focused on Dotsey as the probable perpetrator. Appellant was apprehended in Rockdale some four hours after the felony theft was committed in Cameron. Dotsey was discovered by a single officer, late at night in a moving vehicle on a public road. The imminent disposition of stolen property was highly probable. Tex. Code Crim.Pro. art. 18.16 (1974). The hour was late and a magistrate was not readily available. Delay to obtain an arrest warrant was neither feasible nor practical under the circumstances. Officer Murphy was justified in making a warrantless arrest pursuant to the provisions of Tex.Code Crim.Pro.Ann. art. 14.04 (1977), and such was effected. *Jones v. State,* 565 S.W.2d 934 (Tex.Cr.App.1978); *Ancira v. State,* 516 S.W.2d 924 (Tex.Cr.App.1974).[5]

The final question for consideration is the voluntariness of the consent to search. In addition to the claim the search was the fruit of an illegal arrest, the appellant alleges consent was induced, in part, by the false representations Melton had made statements to the police concerning the thefts.

 Consent to search cannot be obtained as a result of duress or coercion, express or implied. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Further, the burden is

---

4. Although Melton initially denied having spoken to Officer Holmes concerning the thefts, during cross-examination, he admitted he, Hudson, and Holmes had discussed the entire matter while the stereo was being hidden outside.

5. Although the testimony reveals Officer Murphy did not expect his actions to be construed as the arrest, the appellant reasonably believed he was in custody and such is controlling here. *De Lira v. State,* 164 Tex.Cr.R. 194, 297 S.W.2d 953 (1956); *Trollinger v. State,* 153 Tex.Cr.R. 364, 219 S.W.2d 1018 (1949).

on the State to show consent was freely and voluntarily given but the fact the person is under arrest does not, in and of itself, prevent a free and voluntary consent from being given. *Paprskar v. State,* 484 S.W.2d 731 (Tex.Cr.App.1972). Even if the actor is under an illegal arrest or detention, a voluntary consent to search would remove the taint of the arrest and make the fruit of the search admissible. *Potts v. State,* 500 S.W.2d 523 (Tex.Cr.App.1973).[6] Moreover, there is no requirement that *Miranda* warnings be given prior to the obtaining of a consent to search. *Schneckloth v. Bustamonte, supra; De Voyle v. State,* 471 S.W.2d 77 (Tex.Cr.App.1971).

■ Dotsey was stopped by Officer Murphy at approximately 10:30 p. m. His rights were read to him by Officer Harris at 10:58 p. m. Dotsey was informed the police had information he had stolen a stereo from Hudson's Appliance. Dotsey originally denied any knowledge of the missing stereo. Harris then added the police had spoken to Melton, at which point Dotsey retracted his earlier statement and conceded his possession of the stereo, but offered the exculpatory explanation that although the stereo did not belong to him, he had merely picked it up for Melton. Minutes later, Dotsey amended his explanation, saying he was buying the stereo on credit from Hudson and it was hidden outside the store to enable him to pick it up after work. Harris then asked Dotsey's permission to view the stereo and Dotsey gave his written consent at approximately 11:15 p. m.

Although the appellant vehemently denies Melton made any statement to the police, the record contains sufficient evidence to the contrary.[7]

Further, it is uncontroverted Melton admitted his entanglement to Hudson and Hudson related the circumstances to Officer Holmes. Even if it were conceded, *arguendo,* Officer Harris was incorrect when he informed Dotsey that Melton had made statements to the police, the voluntariness of the consent would remain unimpaired.

■ In *Schneckloth v. Bustamonte, supra,* the United States Supreme Court held the validity of an alleged consent to search would be evaluated in the same light cast by the voluntariness test used in coerced confession cases.

■ Voluntariness is not destroyed, and a confession induced by deception or trickery is not inadmissible, unless the method used was calculated to produce an untruthful confession or was offensive to due process. *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Johnson v. State,* 378 S.W.2d 76 (Tex.Cr.App.1964); *see, Cortez v. State,* 47 Tex.Crim.R. 10, 83 S.W. 812 (1904).

The *Frazier* Court held when the police falsely inform the defendant his companion has confessed, such artifice is insufficient to make his otherwise voluntary confession inadmissible. Numerous concurring state decisions have followed. *State v. Stevenson,* 200 Neb. 624, 264 N.W.2d 848 (1978); *Jacobs v. State,* 133 Ga.App. 812, 212 S.E.2d 468 (1975); *State v. Stubenrauch,* 503 S.W.2d 136 (Mo.App.1973).

■ As previously noted, we find sufficient evidence to sustain the finding Melton did, in fact, make statements to the police concerning the thefts. However, a confession produced as a result of circumstances similar to those *alleged* by appellant would still be considered voluntary. In light of the aforegoing, the Court has little difficul-

---

6. *Compare,* however, *Truitt v. State,* 505 S.W.2d 594 (Tex.Cr.App.1974), in which the court hints consent would be invalid if the arrest were illegal.

7. An example is found in Melton's cross-examination by the county attorney:

Q: Okay. But you all had a discussion when Officer Holmes was out there about what all was coming down expecting Mr. Dotsey, didn't you?

A: Yes.

Q: You all had a discussion, you and Mr. Hudson and Officer Holmes about what was going on about that sterio [sic], didn't you?

A: Yes. . .

ty in determining a consent to search, with its lesser constitutionally mandated safeguards, can be voluntary despite unproved allegations of deception by the police as to whom the statements of a co-conspirator were made.

The judgment of the trial court is in all things affirmed.

Affirmed.