

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0006-25

### STATE OF TEXAS

### v.

### AMANDA MCDONALD, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE 13TH COURT OF APPEALS
### BEXAR COUNTY

MᴄCʟᴜʀᴇ, J., delivered the opinion of the Court in which Sᴄʜᴇɴᴄᴋ, P.J., Rɪᴄʜᴀʀᴅsᴏɴ, Yᴇᴀʀʏ, Kᴇᴇʟ, Wᴀʟᴋᴇʀ, and Pᴀʀᴋᴇʀ, JJ., joined. Nᴇᴡᴇʟʟ, J., concurred. Fɪɴʟᴇʏ, J., joined except as to Part I. iii.

## O P I N I O N

In 2007, the State charged Appellee with intoxication manslaughter and failure to stop and render aid for her role in a fatal car accident. Appellee immediately retained counsel after being charged. The following year, in 2008, the grand jury no-billed and dismissed the charges. Ten years later, in 2018, police re-approached her

to ask her questions about the car accident. In 2020, Appellee was again charged with one count of failure to stop and render aid and one count of intoxication manslaughter, as she was previously charged in 2007. Appellee filed a motion to suppress alleging that police had violated her Sixth Amendment right to counsel when police questioned her ten years after the case was first no-billed. The trial court granted the motion to suppress, and the State appealed.

We granted review in this case to determine whether Appellee still enjoyed a Sixth Amendment right to counsel after a grand jury no-billed the intoxication manslaughter and failure to stop and render aid charges brought against her. We hold that she did not.

## BACKGROUND

In 2007, Brandon Fletcher was fatally injured in a hit-and-run collision. San Antonio Police Officer Brian Sullivan served as the lead detective in the investigation. Over the years, Appellee's case "stuck" with Sullivan because Appellee was his prime suspect, and the investigation ultimately did not result in a conviction. Even though nobody asked Sullivan to re-investigate the case, Sullivan felt compelled to investigate it again. Therefore, in 2018, Sullivan went to Appellee's house and questioned her about the 2007 car accident. Officer Jeremy Goodwin accompanied Sullivan, and Goodwin's body cam recorded the visit. During the interview,

Appellee ended up talking to Goodwin about the accident. This questioning resulted in Appellee being reindicted.

After being charged, Appellee filed a motion to suppress the statements she made to the officers. She argued that Sullivan and Goodwin violated her Sixth Amendment right to counsel because the right to counsel had attached in 2007 and was still intact when she was questioned in 2018. At a hearing on the motion, Sullivan testified that no one at the District Attorney's Office or SAPD asked him to resume the investigation. He also testified that although he knew Appellee was represented by counsel back in 2007, he did not know whether she was still represented by counsel when he questioned her ten years later.

Defense counsel questioned Sullivan about what he remembered from the day he questioned Appellee:

> Q: [D]o you remember telling [Appellee] ["]you stopped talking to me?["]
> A: Yes.
> Q: Okay. And she said she couldn't. Right?
> A: Yes.
> Q: You asked her why. Right?
> A: Like I said, I don't remember my words, but I will say yes.
> Q: Okay. And she said ["]my lawyer.["] Right?
> A: I guess that's a yes. If that's what the words are.
> Q: And then you said, ["]You still could have talked all you wanted, so I am just trying to go back to that point where you were talking to me.["]
> A: Right.
> Q: Do you remember saying that?

A: I don't remember, but I will acknowledge that I did say that. Yes.
Q: So in effect, did you say, ["]I am just trying to get around this whole attorney-client nonsense.["] Right?
A: I was referring to . . . the interrogation at the time of the custodial arrest in 2007. That's what I was referring to just to that point.

The attorney who served as Appellee's defense counsel in the 2007 cases also testified at the hearing. He told the trial court that although he did not presently represent Appellee, he believed the original attorney-client relationship was still intact when Sullivan questioned her in 2018.

After the hearing, the trial court granted the motion to suppress, concluding that Appellee's Sixth Amendment right to counsel was violated. The trial court made the following findings (among others):

- According to Goodwin's body cam, Sullivan tried to talk to Appellee at one point and she said, "I couldn't! My lawyer!" Appellee's father, who was in the house that day, then mentioned the names of defense counsel, and Appellee reiterated who her lawyers were at the time.
- At about 20 minutes into the interview, Appellee said, "I don't have to talk to you." She walked away and could be heard shouting in the hallway, ". . . not without my lawyer."
- At about 1 hour and 14 minutes into the interview, as Sullivan and Goodwin were leaving, Appellee's father asked them if it would be okay if they contacted their attorney to tell him the police had been there and that "you [the police] had checked this out."
- Appellee's father was very soft-spoken and had initially hired defense counsel in 2007. Although it could not be heard on the video, it is "hard to believe that the father never mentioned them having a lawyer during the 1 hour and 15 minutes Sullivan and Goodwin were at Appellee's house."

- When Appellee was questioned in 2018, she continued to be represented by the same counsel she retained in 2007 for the original charges. That attorney-client relationship didn't end until new counsel was appointed in 2020.
-  The trial court found the following parts of Sullivan's testimony not to be credible: (a) that Sullivan did not remember talking to defense counsel in 2007 and 2008; (b) that Sullivan did not contact Appellee's 2007-2008 defense counsel before questioning Appellee in 2018 because he did not know who her attorney was; and (c) that when Sullivan went to Appellee's house in 2018, Sullivan was not aware or did not believe that Appellee was still represented by defense counsel."
- Even though formal charges weren't pending when Appellee was questioned in 2018, it was clear from Sullivan's hearing testimony that his investigation of the case was "ongoing."
- Although Appellee wasn't in custody when the officers questioned her in 2018, she was questioned for the purpose of acquiring enough incriminating information so she could be re-charged for the offenses from 2007, "offenses for which she had retained legal counsel and who she specifically named at least twice during the interview."

After the trial court granted the motion to suppress,[1] the State appealed. The State argued that Appellee did not possess a Sixth Amendment right to counsel when she was questioned in 2018 because that right terminated after her charges were no-billed in 2008 and remained dormant for ten years.

---

[1] In *Frye*, we observed that the United States Supreme Court has held that when a Sixth Amendment violation has occurred, the trial court must "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant effective assistance of counsel and a fair trial." *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995) (citing *U.S. v. Morrison*, 449 U.S. 361, 365 (1981)). A dismissal may be proper when "a defendant suffers demonstrable prejudice, or a substantial threat thereof, and where the trial court is unable to identify and neutralize the taint by other means." *Id.*

The Thirteenth Court of Appeals rejected that argument and concluded that Appellee's Sixth Amendment right to counsel, which attached in 2007, remained in effect at the time of the 2018 questioning. The court considered *Frye* and concluded that Appellee's right to counsel remained intact in 2018 because (1) the original right had attached in 2007, (2) she remained represented after the charges were no-billed, (3) the attorney-client relationship remained intact, and (4) the renewed investigation was ongoing and known to the officers. The court further rejected the State's claim that Appellee's Sixth Amendment right expired merely by the passage of time. For the reasons discussed below, we disagree.

## THE SIXTH AMENDMENT RIGHT TO COUNSEL

The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

U.S. CONST. AMEND. VI.

The purpose of the Sixth Amendment right to counsel guarantee "is to 'protect the unaided layman at critical confrontations' with his 'expert adversary,' the government, after 'the adverse positions of government and defendant have

solidified' with respect to a particular alleged crime." *McNeil v. Wisconsin*, 501 U.S. 171, 177–78 (1991) (quoting *U.S. v. Gouveia*, 467 U.S. 180, 189 (1984)). At least after the initiation of formal charges, the Sixth Amendment guarantees an accused "the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S. 159, 176 (1985).

The Sixth Amendment right to counsel attaches once a person is formally charged with a crime. *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 198 (2008) (citing *McNeil*, 501 U.S. at 175). Accordingly, a suspect enjoys a Sixth Amendment right to counsel during interrogations that occur after the suspect has been formally charged with a crime. *State v. Maldonado*, 259 S.W.3d 184, 187 (Tex. Crim. App. 2008).

As a corollary, a suspect who is subject to a noncustodial interrogation prior to the initiation of formal charges does not enjoy a Sixth Amendment right to counsel. *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) ("[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."). A suspect's Sixth Amendment rights attach when there are formal adversarial proceedings. *Frye*, 897 S.W.2d at 327.

The Sixth Amendment right to counsel is both offense-specific and proceeding-specific. As discussed, the right attaches only at "'the initiation of

adversarial judicial proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Rothgery*, 554 U.S. at 198 (quoting *Gouveia*, 467 U.S. at 188). The right is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent. *Moulton*, 474 U.S. at 171, 176; *see also Westbrook v. State*, 29 S.W.3d 103, 117 (Tex. Crim. App. 2000). Once charges are dismissed, however, the adversarial process terminates, and with it, the Sixth Amendment right to counsel.

Every court in this country is bound by this principle, as the United States Supreme Court has made clear that the right to counsel "'cannot be invoked once for all future prosecutions.'" *Texas v. Cobb*, 532 U.S. 162, 167 (2001) (quoting *McNeil*, 501 U.S. at 175). The right is not a free-floating entitlement that exists independent of an active prosecution; rather, it attaches at the first formal proceeding and generally ends with the dismissal of the charges. *See Frye*, 897 S.W.2d at 328 (explaining that when charges are dismissed, the parties are no longer in legally adversarial positions).

The right is offense-specific and typically does not persist absent ongoing charges. *See Frye*, 897 S.W.2d at 329 ("[T]he Sixth Amendment right to counsel is

offense specific and will not bar police-initiated interrogation for non-charged crimes[.]").

Thus, when the State dismisses a case, the prosecution ceases to exist. Without an active criminal proceeding, the Sixth Amendment right to counsel necessarily terminates. If charges are later re-filed, the right to counsel attaches anew at the initiation of those new adversarial proceedings; it typically does not "carry over" from the previously dismissed case.

## ANALYSIS

### I. APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL

#### i. Adversarial proceedings against Appellant terminated in 2008.

As discussed above, the Sixth Amendment is case specific and does not continue once charges are no longer pending. Indeed, once charges are no longer pending there is no longer a need for a legal "expert adversary" to be a "medium" between the client and law enforcement. Here, the charge had been no-billed by a duly appointed grand jury. In reliance upon that no-bill, the State dismissed the charges ten years prior to the interview in question. By that time, appointed counsel was no longer representing Appellee. Under Supreme Court precedent, Appellee's Sixth Amendment right to counsel had terminated.

### ii. No evidence the State dismissed charges specifically to continue investigating and circumvent Appellee's right to counsel.

Appellee argues that law enforcement improperly continued their investigation and deliberately sought to circumvent her right to counsel. For this she relies on this Court's decision in (and the intermediate court's reliance on) *Frye* in which we held that a mere dismissal of a misdemeanor charge while investigation was still ongoing did not terminate the defendant's Sixth Amendment right to counsel. *Frye*, 897 S.W.2d at 329. However, *Frye* is factually distinguishable from the case at hand and does not control the result in Appellee's case.

In *Frye*, this Court examined whether a defendant retained his Sixth Amendment right to counsel in the months following the dismissal of charges on the State's motion. *Frye*, 897 S.W.2d at 325–26. In that case, Frye was first charged by misdemeanor complaint in 1988 for theft of services. *Id.* at 325. He retained counsel, and the State later dismissed the misdemeanor case specifically for a "continuing investigation." *Id.* During that ongoing investigation:

- Two members of the DA's office—an intern and an assistant district attorney—each initiated secret, tape-recorded phone calls with Frye. The first call took place about two months after the case was dismissed, and the second call took place about four months after the dismissal.
- Both knew Frye was represented by counsel.
- Both questioned him directly without notifying his lawyer.
- The calls elicited Frye's defensive theories.

*Id.* at 326.

Three years later, in 1991, Frye was indicted for felony theft. *Id.* The felony indictment alleged the same conduct as that alleged in the original 1988 misdemeanor indictment, aggregated with other offenses to elevate the charge. *Id.* After learning of the tape-recorded phone calls, Frye's counsel moved to dismiss the case. *Id.* The trial court found that the State deliberately circumvented defense counsel and engaged in covert and deceptive recorded communications. *Id.* In doing so, the State violated multiple laws and ethical rules, including the Sixth Amendment right to counsel. *Id.* The court of appeals affirmed.[2]

On appeal to this Court, we agreed that Frye's Sixth Amendment right to counsel remained in effect and that the State violated Frye's Sixth Amendment rights by questioning him without counsel. *Id.* at 325. The Court noted that the trial court found the State reinitiated contact with Frye despite knowing he was represented and learned his defensive strategy. *Id.* at 331. Interrogation without counsel after attachment is a constitutional violation. *Massiah v. U.S.*, 377 U.S. 201, 205–06 (1964). This Court held that such conduct impermissibly circumvented the

---

[2] The court also held that suppression was inadequate because the State had already learned Frye's defense strategy, which could not be unlearned and dismissed the indictment with prejudice for prosecutorial misconduct. *Frye*, 897 S.W.2d at 326.

Sixth Amendment and affirmed the dismissal of the indictment. *Frye*, 897 S.W.2d at 329–30.

However, the Court did not reason that a defendant retained his Sixth Amendment rights in perpetuity. Instead, the Court stated:

> We therefore find that even though the dismissal of the misdemeanor information and complaint altered the positions of the parties, such dismissal was accomplished specifically for the purpose of conducting a "continuing investigation including this transaction."

*Frye*, 897 S.W.2d at 329. This Court also considered that "the charges set forth in the misdemeanor complaint were again alleged in the felony indictment and aggregated with other theft of services offenses in order to increase the offense grade to a felony." *Id*. However, the Court noted that it was "an important consideration" that the State had dismissed the previous misdemeanor charges, because it meant that the State and Appellee "were no longer in legally adversarial positions." *Id*. at 328. Despite this consideration, this Court concluded that "the unique facts of this case" merited an extension of Frye's Sixth Amendment right to counsel. *Id*. at 329–30.

*Frye* did not create a rule that the Sixth Amendment right to counsel remains in perpetuity regardless of whether formal proceedings are terminated. We based the holding in *Frye* on "the unique facts" of that case—namely, that the case was

dismissed specifically for the purpose of a "continuing investigation." *Frye*, 897 S.W.2d at 329. *Frye* represents a narrow exception grounded in egregious prosecutorial misconduct—specifically, a deliberate and calculated effort to circumvent an accused's right to counsel. There, the prosecutor's office exploited the dismissal of charges as a pretext to initiate interrogation on the same offense, knowing that the accused had invoked and retained counsel, and acted with the express purpose of obtaining incriminating statements outside counsel's presence. The constitutional violation in *Frye* flowed not from the mere fact that charges had been dismissed, but from the State's intentional manipulation of the criminal process to evade the protections of the Sixth Amendment. Absent such deliberate circumvention, the settled rule remains that the right to counsel terminates when charges are dismissed.

Unlike the charges in *Frye*, the charges in Appellee's case were not dismissed for purposes of a "continuing investigation," but rather because of a grand jury determination. Nothing in the record indicates that the investigation into her case remained, or would remain, open after the charges were dismissed. There is also no evidence that during the ten years after the charges were dismissed, Appellee's cases remained active or that the State continued to investigate the car accident. While the officers certainly reapproached Appellee for the purpose of obtaining information so

that Appellee could be re-charged, the termination of the criminal cases ten years earlier was still not done specifically to continue the investigation. Consequently, the Court of Appeals erred to rely upon *Frye*.

### iii. No evidence that law enforcement engaged in impermissible trickery or coercion.

This Court's precedent explaining what does—and does not—render a statement involuntary under due process is informative here. Texas courts have long recognized that the use of deception during an investigation does not automatically render a suspect's statement "involuntary." *See, e.g., Creager v. State*, 952 S.W.2d 852, 856. While coercion, threats, or promises may undermine the voluntariness of a confession, "trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process." *Creager*, 952 S.W.2d at 856 (citing *Dotsey v. State*, 630 S.W.2d 343, 349 (Tex. App.—Austin 1982, no pet.)).

Thus, the mere use of investigative strategy—even when it involves misrepresentations about facts or evidence—does not itself rise to the level of constitutional coercion. Instead, the voluntariness inquiry turns on the totality of the circumstances. The question is whether law enforcement employed tactics that were so coercive as to overbear the suspect's will or were designed to elicit a false

confession. *See Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985) (describing relevant factors in determining whether a defendant's will was overborne during questioning).

Consistent with this principle, Texas courts have repeatedly acknowledged that investigators may use strategic misrepresentations during questioning without invalidating an otherwise voluntary statement. *See, e.g., Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010) (explaining that police use of "trickery and deception" during interrogation is generally permissible whereas fabricating evidence is not); *see also Creager*, 952 S.W.2d at 856. Accordingly, the use of strategic misrepresentations by law enforcement—standing alone—does not constitute the type of deception that renders a statement involuntary. Absent evidence that the deception was calculated to produce a false confession or that it otherwise overcame the suspect's ability to exercise free choice, such tactics fall within the range of permissible investigative methods. Under the governing precedent of this Court, a statement obtained through these means remains voluntary so long as the totality of the circumstances demonstrates that the suspect's will was not overborne.

Here, officers informed Appellee that she was not in trouble and that the matter was not Detective Goodwin's case. The record here contains no indication that Detective Goodwin tricked or pressured McDonald into speaking. Instead, it

reflects that McDonald herself initiated the conversation after having previously acknowledged her right to counsel. The fact that officers assured her she was "not in trouble" does not transform an otherwise voluntary conversation into an unconstitutional interrogation tactic.

## CONCLUSION

Appellee's Sixth Amendment right to counsel terminated in 2008. Accordingly, the statements she made during her conversation with Detective Goodwin in 2018 were properly admissible. We therefore reverse the judgment of the court of appeals and reverse the trial court's order granting the motion to suppress and remand the case for proceedings consistent with this opinion.


Delivered: April 16, 2026

Publish